**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

JAN - 5 2021

CLERK, U.S. DISTRICT COURT
By_____
                    Deputy

| | |
|---|---|
| **ANTHONY STEVEN AGUILAR,** § | |
| § | |
| **Movant,** § | |
| § | |
| **v.** § | **Crim No. 4:05-cr-00195-A-5** |
| § | |
| **UNITED STATES OF AMERICA,** § | |
| § | |
| **Respondent.** § | |

<u>**MOTION FOR COMPASSIONATE RELEASE PURSUANT TO**</u>
<u>**18 U.S.C. § 3582(C)(1)(A) AND FIRST STEP ACT OF 2018**</u>

COMES Movant, ANTHONY STEVEN AGUILAR ("Aguilar"), appearing *pro se,* and respectfully moves the Court under 18 U.S.C. § 3582(c)(1)(A)(i) to modify his sentence and immediately release him to home confinement and a period of supervised release. The unprecedented threat of COVID-19 could not have been foreseen at sentencing, and poses extraordinary risks to Aguilar's health. The virus thrives in densely packed populations, and the FMC is ill-equipped to contain the pandemic and prevent COVID-19 from becoming a de facto death sentence for Aguilar. Aguilar's diagnosed medical conditions make him especially vulnerable to the deadly risks of COVID-19. Allowing Aguilar to finish out his sentence at home is the only prudent response to the extraordinary and compelling circumstances created by the novel coronavirus.

# I.   JURISDICTION

The district court's jurisdiction to correct or modify a defendant's sentence is limited to those specific circumstances enumerated by Congress in 18 U.S.C. § 3582. The scope of a proceeding under 18 U.S.C. § 3582(c)(2) in cases like this one is extremely limited. *Dillon v. United States*, 130 S.Ct. 2683, 2687(2010). It is black-letter law that a federal court generally "may not modify a term of imprisonment once it has been imposed." *Id.* However, Congress has allowed an exception to that rule "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2); see also, *Freeman v. United States*, 131 S.Ct. 2685 (2011) (reciting standard for sentence modifications). Such defendants are entitled to move for retroactive modification of their sentences. *Dillon*, 130 S.Ct. at 2690–91.

# II.   PROCEDURAL HISTORY

## A.   Procedural Background

On December 14, 2005, a grand jury in United States District Court for the Northern District of Texas, Fort Worth Division, returned a fourteen (14) Count

Indictment, charging Aguilar and fourteen other co-defendants. See Doc. 1.[1] Count 1 charged Aguilar with Conspiracy to Distribute and Possess with Intent to Distribute More Than 50 Grams of Pure Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. *Id.*

On March 13, 2006, a two-day jury trial commenced. See Doc. 258.

On March 14, 2006, the jury returned a guilty verdict as to Aguilar on Count 1 of the Indictment. See Doc. 267.

On June 30, 2006, Aguilar was sentenced to a term of 360 months' imprisonment, 5 years of Supervised Release, no Fine or Restitution, and a Mandatory Special Assessment Fee of $100. See Docs. 382, 389. On the same day, Aguilar filed a Notice of Appeal. See Doc. 383.

On July 20, 2007, the United States Court of Appeals for the Fifth Circuit ("Fifth Circuit") issued an Order affirming Aguilar's sentence and conviction. See Docs. 580, 582.

---

[1]

"Doc." refers to the U. S. District Court for the Northern District of Texas, Fort Worth Division, Docket Report in Criminal Number 4:05-cr-00195-A-5, which is immediately followed by the Docket Entry number. "CvDoc." refers to the U. S. District Court for the Northern District of Texas, Fort Worth Division, Docket Report in Civil Number 4:09-cv-00125-A, which is immediately followed by the Docket Entry number."PSR" refers to the Presentence Report in this case, which is immediately followed by the paragraph ("¶") number.

On February 24, 2009, Aguilar filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion"), which was denied on August 10, 2009. See Doc. 632, CvDocs. 1-2, 10-11.

**B.    Statement of the Relevant Facts**

1.    Offense Conduct

Pursuant to USSG § 1131.3(a)(1)(A), the defendant is accountable for all acts and omissions he committed. Additionally, pursuant to USSG § 1B1.3(a)(1)(B), in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), the defendant is accountable for all reasonably foreseeable acts and omissions of other in furtherance of the jointly undertaken criminal activity that occurred during the commission of the offense of conviction.

> Anthony Aguilar was employed by Francisco Flores as a high level distributor of methamphetamine - ICE. Aguilar primarily distributed to Mike Nichols, Katy Miller, Rodney Miller, Michael Cortez, and Kenny Karkalits. In connection with his drug trafficking activities, Aguilar employed Mathew Becker as a runner. As such, Aguilar directed Becker's illegal activities.

> During the life of the conspiracy, Aguilar was arrested with 29.6 grams of methamphetamine. Additionally, Cortez was arrested with 377.3 grams of methamphetamine. (During post arrest statements, Cortez indicated the drugs had come from Aguilar.) Thus, a total of 406.9 grams of methamphetamine was seized in connection with Aguilar.

In addition to the seizures, several conspiracy members provided statements which relate to Aguilar's drug amounts. Flores stated he purchased one-fourth pound (113.4 grams) of methamphetamine every week. Cortez stated he purchased pound quantities (453.6 grams) of methamphetamine - ICE from Aguilar. Mario Beltran stated Aguilar would sell as much as one-half pound (226.8 grams) of methamphetamine - Ice. Rodney Miller estimated he (Miller) received a total of 1 pound (453.6 grams) of methamphetamine - ICE from Aguilar when he (Miller) resided in Odessa, Texas. Scott Clement stated he saw Aguilar and several others in a room at the primary "stash house" in the spring of 2003, along with 10 to 20 pounds (4.5 to 9 kilograms) of methamphetamine - ICE, a large sum of cash, and several firearms. Jose Amaya reported Aguilar received from one-fourth pound (113.4 grams) to one-half (226.8 grams) pound quantities of methamphetamine ICE from him (Amaya).

The estimates of the methamphetamine - ICE provided above far exceed the 1.5 kilograms of ICE necessary to invoke a base offense level of 38, which is the highest possible base offense level associated with the drug table found in USSG § 2D1.1. The GBH, cocaine, and ecstacy will not be used to calculate the guidelines as the Flores conspiracy primarily dealt with methamphetamine - ICE. Adding the GLIB, cocaine, and ecstacy would not affect the guideline calculations.

See PSR ¶¶ 35-39.

    2.   <u>Trial Proceeding</u>

Attorney Brett Boone was appointed as Aguilar's trial counsel on January 5, 2006. At trial, the government called numerous witnesses to testify as to Aguilar's alleged tied to the charged conspiracy and his role in buying and selling methamphetamine. After a two-day trial, a jury found him guilty as charged on March 14, 2006. See Doc. 267. The case was referred to the Probation Office for the

preparation of the PSR. Following his conviction, Aguilar filed a motion for new trial, which the Court denied on March 22, 2006. See Docs. 273, 275.

### 3.   Presentence Report Calculations and Recommendations

The Probation Office prepared Aguilar's PSR, using the 2005 edition of the Guidelines Manual. See PSR ¶ 44. Count 1: Drug Conspiracy calls for a Base Offense Level of 38 because Aguilar was held accountable for at least 1.5 kilograms of methamphetamine-ICE, pursuant to USSG § 2D1.1(c)(1). See PSR ¶ 45. Two (2) levels were added for the firearm, pursuant to USSG § 2D1.1(b)(1). See PSR ¶ 46. Another two (2) levels were added for Aguilar's role in the offense as a manager or supervisor, pursuant to USSG § 3B1.1(c). See PSR ¶ 48. The PSR calculated Aguilar's Total Offense Level to be level 42. See PSR ¶ 51. Aguilar's total criminal history point(s) of 1, placed him in Criminal History Category I. See PSR ¶ 55. Based upon a Total Offense Level of 42 and a Criminal History Category of I, the guideline imprisonment range was 360 months to Life. See PSR ¶ 85.

### 4.   Sentencing Proceeding

On June 30, 2006, a Sentencing Hearing was held before Judge John McBryde. See Doc. 382. At sentencing, the court sentenced Aguilar to a term of 360 months' imprisonment followed by a five-year term of supervised release. A timely Notice of appeal was filed on the same day. See Doc. 376.

6

5.      Appellate Proceeding

On Appeal, Aguilar argued that the District Court erred by denying his motion

to suppress and by relying on unreliable hearsay in sentencing him. His conviction

and sentence were affirmed on July 20, 2007. *United States v. Aguilar*, 237 F. App'x.

956 (5ᵗʰ Cir. 2007) (unpublished). Aguilar's petition for writ of certiorari was denied

on February 25, 2008.

6.      Postconviction Procceding

On February 24, 2009, Aguilar filed a § 2255 Motion, claiming that he received

ineffective assistance of counsel. The Court opined that Aguilar failed to show

deficient conduct or resulting prejudice, hence, his motion was denied on August 10,

2009. See CvDocs. 10-11.

## III. DISCUSSION

As a preliminary matter, Aguilar respectfully requests that this Court be

mindful that *pro se* pleadings are to be construed liberally. See *United States v.*

*Kayode*, 777 F.3d 719 (5ᵗʰ Cir. 2014) (*Pro se* pleadings are to be held to less stringent

standards than formal pleadings drafted by lawyers, and should therefore be liberally

construed); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (same); and *Haines v. Kerner*,

404 U.S. 519, 520 (1972) (same).

7

## Aguilar's Current Conditions of Confinement and Health Conditions.

1.    Defendant, Anthony Steven Aguilar, was sentenced in 2006 for Conspiracy to Distribute and Possess with Intent to Distribute Pure Methamphetamine (Count 1). This gave Aguilar a total term of 360 months' imprisonment.

2.    Aguilar's projected release date is on July 18, 2031. However, he suffers from incurable, progressive disease, from which Aguilar will never recover, to wit: Hypertension and Hypertensive Heart Disease. Aguilar also suffers from osteoarthritis, chronic constipation for 15 years, he had undergone nose surgery (which causes him to breathe through one side of the nose), and had two (2) hernia operations (causing severe bowel obstruction). See Exhibit 1.

3.    Aguilar, age 46, currently housed at Federal Medical Center, in Butner, North Carolina ("FMC Butner").

## Facts:

*Hypertension*. Hypertension is another name for high blood pressure. It can lead to severe health complications and increase the risk of heart disease, stroke, and sometimes death. Blood pressure is the force that a person's blood exerts against the walls of their blood vessels. This pressure depends on the resistance of the blood vessels and how hard the heart has to work.

Hypertension is a primary risk factor for cardiovascular disease, including stroke, heart attack, heart failure, and aneurysm. Keeping blood pressure under control is vital for preserving health and reducing the risk of these dangerous conditions.

*Hypertensive Heart Disease*. Hypertensive heart disease refers to heart conditions caused by high blood pressure. The heart working under increased pressure causes some different heart disorders. Hypertensive heart disease includes heart failure, thickening of the heart muscle, coronary artery disease, and other conditions.

Hypertensive heart disease can cause serious health problems. It's the leading cause of death from high blood pressure.

### i.   **UNDER THE FIRST STEP ACT, THIS COURT HAS BROAD AUTHORITY TO DETERMINE WHETHER EXTRAORDINARY AND COMPELLING CIRCUMSTANCES EXIST TO MODIFY AGUILAR'S SENTENCE AND RELEASE HIM TO HOME CONFINEMENT.**

The First Step Act ("FSA") expressly permits Aguilar to move this Court to reduce his term of imprisonment and seek compassionate release. See 18 U.S.C. § 3583(c)(1)(A)(i). Under normal circumstances, a defendant can seek recourse through the courts after either (1) the BOP declines to file such a motion on his behalf; or (2) there has been of lapse of 30 days from the warden's receipt of the defendant's request, whichever is earlier. *Id.*

**Note:** Aguilar has filed a Motion for Compassionate Release with the FMC Butner Warden on July 3, 2020. He followed up by filing a Regional Administrative Remedy on July 21, 2020; because he disagree with the Warden's decision. Then, on August 25, 2020, Aguilar filed a BP-11 Administrative Remedy at the Central Office because he did not get a response within the 35-day response period. So then on September 10, 2020, Aguilar received a late response re: Administrative Remedy Coordinator Regional Office, asking for an extension for Response due on September 25, 2020. On September 16, 2020, a Rejection Notice came from the Central Office Appeal Remarks: Region accepted your Appeal o n August 31, 2020 and extended

9

the due date: so Aguilar waited and extra three (3) weeks past due date. Now, Aguilar has filed another BP-11 Administrative Remedy on October 12, 2020. Up to this date, Aguilar has not received any decision yet as to his motion to reduce his sentence. See Exhibit 2. On September 10, 2020, Aguilar received a late response, asking for an extension. Up to this date, Aguilar has not received any decision yet as to his motion to reduce his sentence.

Because more than 30 days have passed since Aguilar submitted his request for compassionate release to the Warden of FMC Butner, exhaustion of administrative remedies is not an issue in this case. See 18 U.S.C. § 3582(c)(1)(A).

Further, the policies underlying such requirements would not be furthered by strict adherence in this instance. Giving the BOP time to decide administrative applications for compassionate release predicated on COVID-19 concerns would not "afford the parties and the courts the benefit of [the BOP's] experience and expertise." *Salfi*, 422 U.S. at 765. The BOP already has provided its "expert" input on such requests: its "COVID-19 Action Plan" lacks any consideration whatsoever of compassionate release. See Federal Bureau of Prisons COVID-19 Action Plan, available at https://www.bop.gov/resources/news/20200313_covid-19.jsp. And the FCI Legal Department has no institution-specific requirements for requesting compassionate release and no specific procedure in place for compassionate release

during this pandemic. Thus, it would be futile to force defendants to exhaust their administrative remedies—at the cost of their health and, potentially, their lives.

As discussed below, it is only a matter of time before COVID-19 spreads like wildfire in the prisons. And, as the [prison's] management plan itself acknowledges, symptoms of COVID-19 can begin to appear 2-14 days after exposure, so screening people based on observable symptoms is just a game of catch up.

As of October 16, 2020, we have 39,186,810 cases of COVID-19 and 1,101,692 deaths worldwide. The United States alone has 8,036,234 confirmed cases of COVID-19 and 217,870. As there is no vaccine yet to fight the novel virus, the government and medical experts, advise that to protect yourself and help prevent spreading the virus to others, do the following:

- Wash your hands regularly for 20 seconds, with soap and water or alcohol-based hand rub;
- Cover your nose and mouth with a disposable tissue or flexed elbow when you cough or sneeze;
- Avoid close contact (1 meter or 3 feet) with people who are unwell; and
- Stay home and self-isolate from others in the household if you feel unwell.

With the speed and unpredictability of this pandemic worldwide—now U.S. is the epicenter of the pandemic—waiting even 30 days will be too late. Accordingly, this Court should exercise jurisdiction over Aguilar's emergency motion for

11

compassionate release and dispense with the BOP requirements under 18 U.S.C. § 3582(c)(1)(A)(i).

Indeed, in *United States v. Wilson Perez*, 17 Cr. 513 (AT) (S.D.N.Y. Apr. 1, 2020), ECF No. 98, the Honorable Analisa Torres deemed the exhaustion requirement waived, and held that all three exceptions (futility, incapability, and prejudice) apply to the instant circumstances. See also *United States v. Latrice Colvin*, No. 19 Cr. 179 (JBA) (D. Conn. Apr. 2, 2020), ECF No. 38 (granting compassionate release and waiving exhaustion requirement); *United States v. Zukerman*, 16 Cr. 194 (AT), 2020 WL 1659880 (S.D.N.Y. Apr. 3, 2020), at *2 (same); *United States v. Powell*, 94 Cr. 316 (D.D.C. Mar. 28, 2020), ECF No. 98 (same).

### A.   **"Extraordinary and Compelling Reasons" Warrant a Reduction in Aguilar's Sentence.**

### 1.   COVID-19 Is a Public Health Disaster That Threatens Vulnerable Incarcerated Persons like Aguilar.

The COVID-19 pandemic continues to roil the United States. As December 11, 2020, the BOP has 124,611 federal inmates in BOP-managed institutions and 14,017 in community-based facilities. The BOP staff complement is approximately 36,000. There are 7,166 federal inmates and 1,716 BOP staff who have confirmed positive test results for COVID-19 nationwide. There have been 155 federal inmate deaths and 2 BOP staff member deaths attributed to COVID-19 disease. See

https://www.bop.gov/coronavirus (last accessed on December 11, 2020). Federal facilities are not immune. The numbers are likely higher, as testing is limited. See, e.g., *In the Matter of the Extradition of Manrique*, 2020 WL 1307109, at *1 (N.D. Cal. Mar. 19, 2020) (expressing concern about the infection rate within BOP facilities given that "people are not being tested").

Conditions of confinement create an ideal environment for the transmission of highly contagious diseases like COVID-19. Because inmates live in close quarters, there is an extraordinarily high risk of accelerated transmission of COVID-19 within jails and prisons. Inmates share small cells, eat together and use the same bathrooms and sinks. . . . . They are not given tissues or sufficient hygiene supplies"); Joseph A. Bick (2007). *Infection Control in Jails and Prisons*. Clinical Infectious Diseases 45(8):1047-1055, at https://academic.oup.com/cid/article/45/8/1047/344842 (noting that in jails "[t]he probability of transmission of potentially pathogenic organisms is increased by crowding, delays in medical evaluation and treatment, rationed access to soap, water, and clean laundry, [and] insufficient infection-control expertise"). BOP employees are complaining that they lack masks and gloves, hand sanitizer, and even soap.

"The [BOP] management plan itself acknowledges [that] symptoms of COVID-19 can begin to appear 2-14 days after exposure, so screening people based

on observable symptoms is just a game of catch up. . . . We don't know who's infected." *Manrique*, 2020 WL 1307109, at \*1.10

Indeed, as the Second Circuit recently observed, present information about the COVID-19 epidemic and the BOPs' prior failings in 2019 to adequately protect detainees and allow them access to counsel and their families following a fire and power outages suggest that the virus' impact will likely be "grave and enduring." *Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, No. 19-1778, 2020 WL 1320886, at \*12 (2d Cir. Mar. 20, 2020).

> 2.   <u>Aguilar's Vulnerability to COVID-19 Due to His High Medical Risk Is an Extraordinary and Compelling Reason That Warrants a Sentence Reduction.</u>

Aguilar is particularly vulnerable to COVID-19 because of his hypertension and hypertensive heart disease. At the time of sentencing, the Court could not have anticipated that Aguilar's diseases will place him in the "high risk" category nor the existence of the COVID-19. As the COVID-19 pandemic continues, it potentially poses a particular issue for older people and people with pre-existing medical conditions (such as diabetes, heart disease, lung disease, and autoimmune disease) appear to be more vulnerable to becoming severely ill with the COVID-19 virus.

### *Lung Problems, Including Asthma*

COVID-19 targets the lungs, so you're more likely to develop severe symptoms

if you have preexisting lung problems, such as: Moderate to severe asthma, Chronic obstructive pulmonary disease (COPD), Lung cancer, Cystic fibrosis, Pulmonary fibrosis. In addition to being an asthma trigger, smoking or vaping can harm your lungs and inhibit your immune system, which increases the risk of serious complications with COVID-19.

### *Heart Disease, Diabetes and Obesity*

People with diabetes, heart disease, high blood pressure or severe obesity are more likely to experience dangerous symptoms if infected with COVID-19. This may be of particular concern in the United States, which has seen increasing rates of obesity and diabetes over the years.

When people with diabetes develop a viral infection, it can be harder to treat due to fluctuations in blood glucose levels and, possibly, the presence of diabetes complications. There appear to be two reasons for this. Firstly, the immune system is compromised, making it harder to fight the virus and likely leading to a longer recovery period. Secondly, the virus may thrive in an environment of elevated blood glucose.

Moreso, obesity and diabetes both reduce the efficiency of a person's immune system. Diabetes increases the risk of infections in general. This risk can be reduced by keeping blood sugar levels controlled and continuing your diabetes medications

15

and insulin. Your risk of serious illness may also be higher if you have heart diseases such as cardiomyopathy, pulmonary hypertension, congenital heart disease, heart failure or coronary artery disease.

### *How SARS-COV-2 Causes Disease and Death in COVID-19*

"You'd think underlying lung problems or immune system problems will be the greatest risk," says Dr. Levitt. "But it seems the biggest risk factors have been hypertension, diabetes and obesity." That has led many scientists to suspect that the profound inflammation seen in severe cases of COVID-19 may be yet another problem linked to SARS-COV-2's fondness for ACE2. People with diabetes, hypertension and heart disease have more ACE2 on their cells as a response to the higher levels of inflammation that come with their condition; ACE2 has an anti-inflammatory effect. When SARS-COV-2 sticks to ACE2 and reduces its ability to do its job, the underlying inflammation gets worse.

When inflammation gets completely out of control the body enters what is called a cytokine storm. Such storms drive the most severe outcomes for COVID-19, including multi-organ failure. There is thus an obvious role for anti-inflammatory drugs. But knowing when to administer them is hard. Go too late, and the storm will be unstoppable; go too early, and you may dampen down an immune response that is turning the tide. A recent article in the Lancet suggests that it would help if COVID-19 patients were routinely screened for hyper-inflammation to help identify those who might benefit from anti-inflammatory drugs. But not everyone is convinced today's drugs have much to offer. "We tried [a range of anti-inflammatory treatment] and it actually didn't work," says Rajnish Jaiswal, who has been working on the front line of COVID-19 treatment at New York's Metropolitan Hospital.

https://www.economist.com/briefing/2020/06/06/how-sars-cov-2-causes-disease-and-death-in-covid-19.

16

Given Aguilar's underlying health conditions, Aguilar will be particularly vulnerable[2] "when, not if" coronavirus comes to the FMC Butner,[3] an "incubator" for the disease[4] with "petri-dish-like conditions."[5] According to public health experts,

---

[2]

Roni Caryn Rabin, *Coronavirus Threatens Americans With Underlying Conditions*, NEW YORK TIMES (Mar. 12,2020), https://www.nytimes.com/2020/03/12/health/coronavirus-midlife-conditions.html ("The new coronavirus is a serious threat to the elderly" and to "those with chronic health conditions . . . Heart disease, cancer, diabetes – all of these can exacerbate a coronavirus infection, studies show, increasing the odds of severe disease and death.")

[3]

Rich Schapiro, *Coronavirus Could 'Wreak Havoc' on U.S. Jails, Experts Warn*, NBC NEWS (Mar. 12, 2020), https://www.nbcnews.com/news/us-news/coronavirus-could-wreak-havoc-u-s-jails-experts-warnn1156586 ("We're in a very perilous stage right now," said Dr. Homer Venters, the former chief medical officer of the New York City jail system. "It's just a matter of time before we see cases inside jails and prisons.").

[4]

Martin Kaste, *Prisons and Jails Worry About Becoming Coronavirus 'Incubators'*, NPR (Mar. 13, 2020), https://www.npr.org/2020/03/13/815002735/prisons-and-jails-worry-about-becoming-coronavirusincubators.

[5]

P. Leila Barghouty, *U.S. Prisons Are Not Ready for Coronavirus*, THE OUTLINE (Mar. 6, 2020), https://theoutline.com/post/8770/prison-coronavirus-covid-19-outbreak?zd=1&zi=oixu2i52; see also Kaiser Health News, *Could Coronavirus Cause a National Prison Lockdown?*, U.S. NEWS & WORLD REPORT (Mar. 13,2020), https://www.usnews.com/news/healthiest- communities/articles/2020-03-13/could-coronavirus-cause-anational-prison-lockdown ("Though small by comparison, the federal system sheds light on issues many state, county and local officials are grappling with now. Because the facilities are typically dense and crowded, they could become prime breeding grounds for the highly contagious coronavirus."); Chris Strohm, *Prisons' Coronavirus Risk Puts Justice Department Under Pressure*, BLOOMBERG (Mar. 12, 2020) (noting concerns that coronavirus outbreak "could spark riots"); Courtney Bublé, *Federal Prison Employees and Others Question BOP's Readiness for Coronavirus*, GOV. EXEC. (MAR. 11,2020), https://www.govexec.com/management/2020/03/federal-prison-employees-and-others-question-bops-readiness-coronavirus/163692/ ("History has shown time and time again that the Federal Bureau of Prisons has never been a proactive agency, but instead a reactive agency."); Joshua Eaton, *Federal Prisons Don't Have Coronavirus Test Kits for Inmates*, ROLL CALL (Mar. 6, 2020), https://www.rollcall.com/2020/03/06/federal-prisons-dont-have-coronavirus-test-kits-for-inmates/ ("Federal prisons, whose inmates may be a high-risk population for a coronavirus outbreak, do not have kits to test for the disease available.").

incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe;" "infection control is challenging in these settings."[6] Outbreaks of the flu regularly occur in jails, and during the H1N1 epidemic in 2009, many jails and prisons dealt with high numbers of cases.[7]

The nearly 900 prisoners at FMC Butner, where Aguilar is housed, face especially high risk. To start, incarcerated people are being confined three to a cell and share showers and common areas, including the food service dining area, with larger groups. While the Centers for Disease Control (CDC) recommends that we all maintain at least a distance of 6 feet, FMC Butner's cells are approximately 10 feet by 12 feet, with bunks and lockers taking up a significant portion of each, making it impossible to properly distance. Additionally, people incarcerated at FMC Butner are expected to continue working on-site without the proper sanitation equipment needed to clean their supplies. Prison officials have explicitly stated that sanitation equipment is "not a priority" for incarcerated workers. Inmates have retaliation from FMC

---

[6]

"Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States," (March 2, 2020), at https://bit.ly/2W9V6oS.

[7]

Prisons and Jails are Vulnerable to COVID-19 Outbreaks, The Verge (Mar. 7, 2020) at https://bit.ly/2TNcNZY.

Butner's safety department when inmates ask for chemical disinfectants and mops. Meanwhile, these same workers are only getting paid 10 to 20 cents per hour — well below the $2 they need to pay for a "sick slip" to get their temperatures checked. While incarcerated, people have expressed concerns about contracting the virus, FMC Butner has threatened them with solitary confinement, also known as "the hole." There's widespread research showing that the isolation of solitary can cause a number of impairments, including hallucination, panic attacks, paranoia, sensitivity to external stimuli, and problems with concentration and memory. In super-maximum prisons, 91% of those in solitary suffered from anxiety, 80% from lethargy and headaches, and 77% from chronic depression. Making matters worse, FMC Butner cut phone time for inmates and blocked email addresses, limiting opportunities to connect with the outside world for help.

As of July 20, 2020, more than 4,000 people confined in the federal system had tested positive, and 97 had died. This includes 25 deaths at FMC Butner alone, making it the deadliest outbreak among federal prisons in the country.

Releasing Aguilar not only helps protect him from infection, it will help alleviate the burdens on the already overtaxed BOP medical system. Indeed, the standard of medical care at Butner has previously been criticized as inadequate even with respect to routine medical treatment. Moreover, it is unclear whether Aguilar

19

will even be able to take basic proactive preventative measures, like regular hand-washing and use of hand-sanitizer (even assuming such products are available).

In short, Aguilar is particularly vulnerable to infection, and, if the virus does infect him, it is more likely to be fatal. See *United States v. Jesus Antonio Mondaca, Sr.*, 89 Crim. 000655 at 6 (S.D. Ca. March 3, 2020 ) (DMS) (compassionate release petition granted, where, among other reasons, elderly defendants had "become increasingly vulnerable to victimization within the correctional facility"). The danger of the situation that Aguilar and other inmates like him face raises constitutional concerns of cruel and unusual punishment, given that they are at greater risk of contracting lethal infections such as the novel coronavirus due to factors such as age or pre-existing medical conditions. See *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.") (citation and internal quotation marks omitted). Indeed, calls for releasing prisoners at risk from coronavirus have come from all quarters. Secretary of State Mike Pompeo has called for Iran to release Americans detained there because of the "deeply troubling" "[r]eports that COVID-19 has spread to Iranian prisons."[8]

---

[8]

Jennifer Hansler and Kylie Atwood, *Pompeo calls for humanitarian release of wrongfully detained Americans in Iran amid coronavirus outbreak*, CNN (Mar. 10, 2020) at https://cnn.it/2W4OpV7.

Courts across Iran have granted 54,000 inmates furlough as part of the measures to contain coronavirus across the country.[9] Closer to home, Brooklyn District Attorney Eric Gonzalez, joined by public health experts, has asked Governor Cuomo to grant emergency clemency to elderly and sick prisoners,[10] as has Manhattan District Attorney Cyrus Vance.[11] District Attorney Gonzalez has acknowledged that, "Once the virus spreads to our prisons, older incarcerated people and those with preexisting health problems will be in the virus's crosshairs and the prisons will not have the capacity to care for them."[12]

Hence, it is appropriate for Aguilar to be released into an environment where he and his loved ones can control and direct his medical care. It is important for all of us to remember that convicted criminals are sent to prison as punishment—not for punishment. People who are severely debilitated or are in the midst of dying are

---

[9]

Claudia Lauer and Colleen Long, *US Prisons, Jails On Alert for Spread of Coronavirus*, The Associated Press (Mar. 7, 2020) at https://apnews.com/af98b0a38aaabedbcb059092db356697.

[10]

Sarah Lustbader, *Coronavirus: Sentenced to COVID-19*, The Daily Appeal (March 12, 2020), https://theappeal.org/sentenced-to-covid-19-2/.

[11]

James D. Walsh, *Will Rikers Island Free Inmates Because of the Coronavirus?*, Intelligencer (Mar. 17 2020), https://nymag.com/intelligencer/2020/03/will-rikers-island-free-inmates-because-of-coronavirus.html ("In a joint statement issued on Tuesday, Gonzalez and Manhattan District Attorney Cy Vance, along with 29 other prosecutors across the country, endorsed temporary release.").

[12]

*Id.*

21

usually no longer a threat to society, and there is not a compelling social advantage

to keeping them in prison.

**Note:**      According to the Centers for Disease Control and Prevention ("CDC"), COVID-19 is a new disease and there is limited information regarding risk factors for severe disease. Based on currently available information and clinical expertise, older adults and people of any age who have serious underlying medical conditions might be at higher risk for severe illness from COVID-19.

a.      Based on what we know now, those at high-risk for severe illness from COVID-19 are:
- People 60 years and older
- People who live in a nursing home or long-term care facility

b.      People of all ages with underlying medical conditions, particularly if not well controlled, including:

- People with chronic lung disease or moderate to severe asthma
- People who have serious heart conditions
- People who are immunocompromised
- Many conditions can cause a person to be immunocompromised, including cancer treatment, smoking, bone marrow or organ transplantation, immune deficiencies, poorly controlled HIV or AIDS, and prolonged use of corticosteroids and other immune weakening medications
- People with severe obesity (body mass index [BMI] of 40 or higher)
- People with diabetes
- People with chronic kidney disease undergoing dialysis
- People with liver disease

are the hallmark of those who are most endangered by the instant pandemic. These

are "extraordinary and compelling reasons" for his release. See Note 1(A), § 1B1.13

(expressly recognizing that "other reasons" may exist for granting compassionate release), see Note 1(D), § 1B1.13 Note 1(D) (recognizing that extraordinary and compelling reasons exists "other than, or in combination with, the reasons described in subdivisions (A) through (C)."). Here, Aguilar's high susceptibility to COVID-19 falls within the purview of this catchall. Moreover, courts have noted that while § 1B1.13 provides "helpful guidance" for determining what constitutes an extraordinary and compelling reason to warrant a sentence reduction, the inquiry does not end there. Rather, district courts have the freedom to shape the contours of what constitutes an extraordinary and compelling reason to warrant compassionate release. Given the highly infectious nature of COVID-19, the inability in a facility like FMC to practice any of the hygienic and social distancing techniques that the Center for Disease Control has put in place to prevent rapid transmission, and the fact that Aguilar suffers from ailments that have already been identified as "high risk," this Court should find that Aguilar's legitimate medical risk is a sufficiently extraordinary and compelling basis for granting compassionate release.

A recent letter by fourteen U.S. senators of both parties underscores this position. Writing to U.S. Attorney General William Barr and BOP Director Michael Carvajal, they stated: "[We] urge you to take necessary steps to protect [inmates in Federal custody] particularly by using existing authorities under the First Step Act

(FSA). . . . We have reviewed the Federal Bureau of Prisons (BOP) COVID-19 Action Plan, which . . . notably does not include any measures to protect the most vulnerable staff and inmates. . . . [I]t is important . . . that the most vulnerable inmates are released or transferred to home confinement, if possible." And as the Second Circuit noted about COVID-19 in a unanimous recent opinion, "The impact of this recent emergency on jail and prison inmates, their counsel . . . , the United States Attorneys, and the BOP, including the individual Wardens and the personnel of each facility, is just beginning to be felt. Its likely course we cannot foresee. Present information strongly suggests, however, that it may be grave and enduring." *Fed. Defs. of New York, Inc.*, 2020 WL 1320886, at *12.

Finally, in the last few months, other jails and prisons have already started to proactively release elderly and sick inmates who are at high risk of infection, as well as releasing as many nonviolent offenders as possible in an effort to reduce the incarcerated population and thus reduce the risk of spread. For example, on March 25, 2020, New York City announced that it would release 300 inmates from Rikers Island. Approximately 1,700 inmates have been released from Los Angeles County Jails, and 1,000 inmates are to be released from New Jersey jails. Therefore, while COVID-19 remains an unprecedented emergency, many states (and politicians) have recognized that they have a duty to flatten the curve inside incarcerated spaces. So,

24

too, should this Court.

### 3. Courts Have Granted Compassionate Release in Light of the Instant Pandemic.

Courts in the Southern and Eastern Districts of New York have granted compassionate release based on COVID-19. See *United States v. Wilson Perez*, No. 17 Cr. 513 (AT) (S.D.N.Y. Apr. 1, 2020), ECF No. 98, (granting release based on health issues and finding court could waive exhaustion requirement; government did not object based on defendant's medical conditions); *United States v. Mark Resnick*, No. 12 Cr. 152 (CM) (S.D.N.Y. April 2, 2020), ECF No. 461 (granting compassionate release because of defendant's age and medical conditions in light of COVID-19); *United States v. Eli Dana*, No. 14 Cr. 405 (JMF) (S.D.N.Y. Mar. 31, 2020), ECF No. 108 (granting compassionate release motion, where government consented, because of defendant's age and medical conditions and the risk posed by COVID-19); *United States v. Damian Campagna*, No. 16 Cr. 78 (LGS), 2020 WL 1489829, at *1 (S.D.N.Y. Mar. 27, 2020) (granting compassionate release sentencing reduction to defendant convicted of firearms offenses based on defendant's health and threat he faced from COVID-19; government consented to reduction and agreed health issues and COVID-19 were basis for relief); *United States v. Daniel Hernandez*, No. 18 Cr. 834 (PAE) (S.D.N.Y. Apr. 1, 2020), ECF No. 446 (granting compassionate release

after BOP denied the request and converting remaining sentence to home confinement); *United States v. Jose Maria Marin*, No. 15 Cr. 252 (PKC) (E.D.N.Y. Mar. 30, 2020), ECF No. 1325-1326 (waiving exhaustion requirement and granting compassionate release to defendant based on special risks he faced from COVID-19).

So, too, have courts across the country. See *United States v. Andre Williams*, No. 04 Cr. 95 (MCR) (N.D. Fla. Apr. 1, 2020) (granting release based on defendant's health and COVID-19); *United States v. Teresa Ann Gonzalez*, No. 18 Cr. 232 (TOR) (E.D. Wa. Mar. 25, 2020), ECF No. 834 (waiving any further exhaustion attempts as futile and granting compassionate release based on defendant's health issues and COVID-19 pandemic); *United States v. Jeremy Rodriguez*, No. 03 Cr. 271 (AB) (E.D. Pa. Apr. 1, 2020), ECF No. 135 (finding court has independent authority to determine "extraordinary and compelling" reasons and granting compassionate release based in part on defendant's health and COVID-19; no exhaustion issue because 30 days had passed); *United States v. Pedro Muniz*, No. 09 Cr. 199 (S.D. Tex. Mar. 30, 2020), ECF No. 578 (granting compassionate release based on health conditions that made inmate susceptible to COVID-19); *United States v. Samuel H. Powell*, No. 94 Cr. 316 (ESH) (D.D.C. Mar. 27, 2020), ECF No. 97 (granting compassionate release for 55-year old defendant with respiratory problems in light of outbreak, without waiting for 30 days or other exhaustion of administrative remedies through the BOP); *United*

26

*States v. Agustin Francisco Huneeus*, No. 19 Cr. 10117 (IT) (D. Mass. Mar. 17, 2020), ECF No. 642 (granting defendant's emergency motion based on COVID-19); *United States v. Coker*, No. 3:14-CR-085-RLJ-DCP-20, 2020 WL 1877800 (E.D. Tenn. Apr. 15, 2020) (Memorandum Opinion, granting compassionate release based in part on COVID-19); *Samy v. United States*, No. 2:16-cr-20610-1, 2020 WL 1888842 (E.D. Mich Apr. 16, 2020) (Order granting petitioner's motion for reconsideration of order denying compassionate release based in part on COVID-19); *US v. Muniz*, No. 4:09-cr-199-DJB (S.D.Tex. Mar 30, 2020) Order Granting CR, Dkt. 578 releasing defendant serving 188-month sentence for drug conspiracy in light of vulnerability to COVID-19); *"United States v. Hill*, 2020 WL 2542725, at *1 (D. Conn. 2020) (prisoner released from FCI Danbury had a splenectomy that compromised his immune system and hypertension)" *United States v. Kelley*, No. 3:18-cr-00269 (JAM), 8 n.8 (D. Conn. Sep. 21, 2020). Hence, Aguilar should be granted the same relief.

    4.    <u>*Alleyne v. United States*, 570 U.S. 99, 103 (2013) Held That Any Fact Which Increases A Mandatory Minimum Sentence is An Element That Must Be Submitted to A Jury.</u>

A.    <u>Drug Weight</u>

    The drug weight is an element of the offense and that any fact that increases a mandatory minimum penalty is an element that must be charged in an indictment and

proved to a jury beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and *Alleyne v. United States*, 570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013). Under those two cases, if Stanback were sentenced today, his sentence would be based on distributing 5 kilograms or more of cocaine, and not at least 90 kilograms of crack cocaine, and a combined amount (321 kilograms) of powder cocaine.

**Note:** Aguilar was found guilty on Count 1: conspiracy to distribute and possess with intent to distribute more than 50 grams of pure methamphetamine only. The PSR held him responsible for at least 1.5 kilograms of methamphetamine-ICE, which was proved to a jury beyond a reasonable doubt.

In *Apprendi*, the Supreme Court held that the Sixth Amendment to the Constitution requires that any fact that increases the penalty for a crime beyond the prescribed statutory maximum, other than the fact of a prior conviction, must be submitted to a jury and proved beyond a reasonable doubt. In *Alleyne*, the Court applied *Apprendi* to the federal mandatory minimum and maximum sentencing scheme and held that because mandatory minimum sentences increase the penalty for a crime, any fact that increases the mandatory minimum is an element of the crime that must be submitted to the jury. *Id.* at 116, 133 S.Ct. 2151 (overruling *Harris v. United States*, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) ).

Neither *Apprendi* nor *Alleyne* are retroactively applicable on collateral review. See *United States v. Sanders*, 247 F.3d 139, 146 (4th Cir. 2001) (joining other circuits in finding that *Apprendi* does not apply retroactively to cases on collateral review); and *United States v. Stewart*, 540 Fed.Appx. 171 (4th Cir. 2013) (*per curiam*) (noting that *Alleyne* has not been made retroactively applicable to cases on collateral review). However, for a period of time after *Apprendi* was decided, including before passage of the Fair Sentencing Act in 2010, the jury ordinarily made a finding regarding the threshold penalty, but the court could and did impose statutory-minimum penalties regardless of any jury finding. That practice was authorized by *Harris*, and *Alleyne* did not overrule *Harris* until three years later, and three years after the Fair Sentencing Act was enacted. Nonetheless, Congress, when drafting the First Step Act in 2018, surely did not intend for courts to disregard the last six years of Supreme Court federal sentencing jurisprudence and this court declines to do so.

*Alleyne* made clear that in order to preserve a defendant's Sixth Amendment right to a jury trial, any fact that increases the statutory mandatory minimum sentence is an element of the crime which must be submitted to the jury. *Alleyne*, 570 U.S. at 116, 133 S.Ct. 2151. In this case, Aguilar was found guilty of conspiracy to distribute and possess with intent to distribute more than 50 grams of pure methamphetamine (Count 1). Under *Alleyne*, this court is not free to ignore that finding and impose a

29

penalty based on at least 1.5 kilograms of methamphetamine-ICE referenced in the PSR. Thus, although *Apprendi* and *Alleyne* are not retroactively applicable on collateral review, this court joins other courts in finding that their holdings are applicable in the context of the First Step Act. See *United States v. Simons*, No. 07-CR-00874, 375 F.Supp.3d 379, 487, 2019 WL 1760840 at *6 (E.D.N.Y. Apr. 22, 2019) (citing *Alleyne* and finding that statutory penalties are determined by facts submitted to a grand jury, trial jury, or established by a guilty plea while findings by a judge may be used to determine a sentence within the statutory penalties and cannot change "the mandatory minimum sentence now applicable"); *United States v. Dodd*, No. 3:03-CR-18-3, 372 F.Supp.3d 795, 2019 WL 1529516 (S.D. Iowa, Apr. 9, 2019) (finding in a First Step Act case that "[b]oth *Apprendi* and *Alleyne* are binding on this Court for sentencings held today."); *United States v. Davis*, No. 07-CR-245(S)(1), 2019 WL 1054554 (W.D.N.Y. Mar. 6, 2019), appeal docketed, No. 19-874 (2nd Cir. Apr. 5, 2019) ("[I]t is the statute of conviction, not actual conduct, that controls eligibility under the First Step Act."); see also *United States v. Laguerre*, No. 5:02-CR-30098-3, 2019 WL 861417 (W.D. Va. Feb. 22, 2019) (relying without discussion on charged drug weight rather than PSR weight to find defendant eligible for relief).

B.   Discretion of the Court

The court under 18 U.S.C. § 3582(c)(1)(B) which states that "the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute", i.e., the First Step Act of 2018, Section 404, "Application of the Fair Sentencing Act", and having considered such motion, and taking into account the policy statement set forth at USSG §1B1.10 and the sentencing factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, ordered that the motion be denied. Aguilar is currently serving a 360-month sentence.

Here, Aguilar claims that if he had been prosecuted after passage of the Fair Sentencing Act and pursuant to *Alleyne* and *Apprendi*, the government would have had to allege 50 grams or more of pure methamphetamine.

Applying the First Step Act calculations to this case, and pursuant to *Alleyne* and *Apprendi*, Aguilar's Base Offense Level will be reduced to level 30. See also 2018 Sentencing Guidelines, indicating that "at least 50 G but less than 150 G of "Ice"" calls for a Base Offense Level of 30, pursuant USSG § 2D1.1(c)(5). Aguilar received a 2-level firearm and 2-level role in the offense enhancements, which will bring his Total Offense Level down to 34. Paired with a Criminal History Category I, his guideline imprisonment range would now be 151 to 188 months.

5.    In Light of *United States v. Mccoy*, Case No 20-6821, 2020 U.S. App. Lexis 37661 (4th Cir. Dec. 2, 2020), Sentence Unfairness and Rehabilitation Gives Sentencing Judges the Right to Make Sentence Reductions Under § 3582(c)(1)(A)(I).

On December 2, 2020, the Fourth Circuit affirmed the district court's grant of defendants' motions to reduce their sentences under the First Step Act and reduce their sentences to time served. In these consolidated appeals, defendants were convicted of robberies and accompanying firearms violations under 18 U.S.C. 924(c).

The court concluded that the district courts appropriately exercised the discretion conferred by Congress and cabined by the statutory requirements of 18 U.S.C. 3582(c)(1)(A). The court saw no error in the district courts' reliance on the length of defendants' sentences, and the dramatic degree to which they exceed what Congress now deems appropriate, in finding "extraordinary and compelling reasons" for potential sentence reductions. In this case, the district courts took seriously the requirement that they conduct individualized inquiries, basing relief not only on the First Step Act's change to sentencing law under section 924(c) but also on such factors as defendants' relative youth at the time of their offenses, their post-sentencing conduct and rehabilitation, and the very substantial terms of imprisonment they already served. The court concluded that these individualized determinations were neither inconsistent with any "applicable" Sentencing Commission guidance nor tantamount to wholesale retroactive application of the First Step Act's amendments to section 924(c).

The compassionate release statute, 18 USC § 3582(c)(1)(A)(i), requires that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission." The policy statement implicated by the statute is set out in USSG § 1B1.13, a Guideline which lists three very specific reasons for granting compassionate release, and a fourth "catch-all" provision permitting grant of a compassionate release motion if "as determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and

32

compelling reason other than, or in combination with, the [other three] reasons."

USSG § 1B1.13 was written before the First Step Act authorized inmates to file their own sentence reduction motions. The Guideline has never been changed, because the Sentencing Commission has lacked a quorum, and thus has been able to conduct no business, since 2018. But that has not stopped the government from arguing that compassionate release motions could not be granted because the Director of the BOP has not decided that possessing COVID-19 risk factor is an extraordinary and compelling reason for a sentence reduction.

Many judges decided that because § 1B1.13 was written back in the day when only the BOP could file the motion, it was a relic that could be ignored. But not all. The result has been a terrible disparity between district courts in granting compassionate release motions: the same set of facts that justify a sentence reduction in front of one judge would be rejected by another.

Last September, the 2nd Circuit laid down the law on compassionate release in *United States v. Brooker* (some are calling the case *United States v. Zullo*), ruling that district courts have broad discretion to consider "any extraordinary and compelling reason for release that a defendant might raise" to justify a sentence reduction under § 3582(c)(1)(A), and that Guideline § 1B1.13 only applies to compassionate release motions brought by the BOP (which would be virtually none of them). Then, two weeks ago, the Sixth Circuit followed *Brooker/Zullo* in United States *v. Jones*, and the Seventh agreed in *United States v. Gunn*.

It may be hard to remember that compassionate release motions get filed for reasons other than COVID-19. One reason advanced by some defendants has been that they received horrific sentences because of stacked § 924(c) convictions. Recall that before First Step, if you robbed a bank with a gun, you got maybe 87 months for the robbery and a mandatory 60 months more for the gun. But rob three banks on successive days, and you would get 87 months for the robbery, 60 more

months for the gun used in the first robbery, 300 months more for the gun used the next day, and 300 more months for the gun used the third day. This was because § 924(c) specified that each subsequent § 924(c) conviction carried 300 months. First Step changed that, making clear that the 300-month sentence only applied if you committed a § 924(c) offense after being convicted of the first offense.

First Step did not make the § 924(c) changes retroactive. Nevertheless, after it passed some guys with stacked § 924(c) violations filed compassionate release motions, arguing that it was extraordinary and compelling to make them serve much longer sentences when the law had changed, and people being sentenced now did not face the same penalty.

One guy in Virginia, Thomas McCoy, and three others from Maryland filed such cases. Their respective district courts agreed with the motions, cutting their sentences to time served. But the government appealed, arguing that the sentence reduction did not fit § 1B1.13, and even if they did, the fact that the defendants had stacked § 924(c) sentences was not extraordinary and compelling because in First Step, Congress decided against retroactivity of the First Step changes to § 924(c). Last week, the 4th Circuit sided with the defendants, in the process pushing the bounds of compassionate release to new horizons.

The Fourth Circuit agreed with *Brooker*, *Gunn* and *Jones* that § 1B1.13 – because it refers only to compassionate release motions filed by the BOP – is not an "applicable policy statement" within the meaning of the statute, and thus may be ignored.

Beyond that, the Fourth rejected the Government's argument that there was nothing wrong with holding the defendants to their draconian sentences, ruling instead that "the district courts in these cases appropriately exercised the discretion conferred by Congress... We see no error in their reliance on the length of the defendants' sentences, and the dramatic degree to which they exceed what Congress now deems appropriate, in finding "extraordinary and compelling reasons" for potential sentence reductions..."

34

The appellate holding is huge, suggesting that sentence unfairness and rehabilitation gives sentencing judges the right to make sentence reductions under § 3582(c)(1)(A)(i).

See *United States v. McCoy*, Case No 20-6821, 2020 U.S. App. LEXIS 37661 (4th

Cir., Dec. 2, 2020). Hence, same relief should be applied in the instant case.

## IV. THE CARES ACT

On March 13, 2020, President Donald Trump declared a state of emergency

due to the novel COVID-19 outbreak. On March 25, the U.S. Senate passed the

Coronavirus Aid, Relief, and Economic Security Act (the CARES Act) to provide

emergency assistance to people affected by the outbreak.

The CARES Act reflects our country's immense concern for people who have

been and will be harmed by the pandemic, including people incarcerated in the

Federal Bureau of Prisons (BOP). Section 12003(b)(2) of the CARES Act permits the

Director of the BOP to lengthen the maximum amount of time that a prisoner may be

placed in home confinement, if the Attorney General finds that emergency conditions

will materially affect the functioning of the BOP.

Previous law dictated that the Director of the BOP had authority to place a

prisoner in home confinement for the shorter of 10 percent of a person's term of

imprisonment or 6 months, but the CARES Act greatly expands that authority to

allow prisoners to be transferred to home confinement earlier in their sentence. Under

the CARES Act, the Director may lengthen the maximum term of home confinement to whatever he determines appropriate during the pandemic. Given the current state of emergency, we urge you to use the CARES Act to quickly transfer prisoners who are at high risk for complications from COVID-19 to home confinement.

COVID-19 is an unprecedented crisis, with widespread harm. The CDC has issued guidance that people over 60 years old and individuals with chronic medical conditions are at a higher risk of contracting COVID-19 and of experiencing more serious complications or death as a result of the illness. The CDC has also advised these individuals to avoid crowds, stay at home as much as possible. Similarly, the CDC has advised that all people practice heightened levels of hygiene and "social distancing," limiting close contact with others as much as possible. People in BOP custody are unable to take any such proactive steps to protect themselves. Indeed, conditions of confinement and the needs of security are often in direct contrast with best practices for limiting contagion and promoting public health during a pandemic.

It is indisputable that COVID-19 and related emergency conditions materially affect the functioning of the BOP. The BOP has suspended visitation and imposed a 14-day quarantine on new transfers. Programming and meal schedules have been dramatically altered.

Of special concern is the fact that many facilities utilize close quarter housing and are unable to adequately distance prisoners, all but guaranteeing a rapid spread of the virus once it takes hold in a facility. That COVID-19 will further materially alter BOP's functioning in the weeks and months to come is assured. The spread of the virus within BOP facilities puts prison staff at high risk of contracting the disease at their workplace. Staffing shortages, including of health care workers, are bound to occur as personnel fall ill and self isolate. The BOP's medical facilities are not staffed or equipped to deal with high numbers of seriously ill people who will need critical care that could last for weeks, as serious cases of COVID-19 do.

Meanwhile, many individuals under BOP custody who are nearing release have already been transferred to residential reentry centers (RRCs). Unfortunately, conditions at RRCs have also been greatly impacted by COVID-19. Movement has been restricted, employment opportunities have halted, people are confined in tight quarters and don't have the resources to comply with CDC guidance addressing their hygiene or freedom to practice social distancing. Individuals in home confinement would be far better equipped to prevent the spread of COVID-19, and they would be a far lower risk to the BOP or the public's health care system.

Here, although those factors fully support the substantial sentence originally imposed, in the current context of Aguilar's advanced age and incurable medical

condition, Aguilar's family believes compassionate release is appropriate at this time.

In light of the outbreak, Aguilar's release does not present a danger to the safety of any other person or to the community and is in keeping with all relevant § 3553(a) factors. Releasing Aguilar will not only protect him from the risk of COVID-19 infection but also avoids the unavoidable impact upon the quality of the medical care he requires by taxing an already taxed system.[13] Moreover, his release will have the added benefit of opening a medical bed to other inmates who will need the medical attention with the coronavirus. Thus, compassionate relief is warranted.

Aguilar is a non-violent and non-sex offender, in fact, Aguilar had no felony prior convictions prior to the instant offense (he is in Criminal History Category I), hence, his recidivism risk is minimal. Based on his medical condition and the world's take on the global pandemic right now, Aguilar has met all the requirements for compassionate release. Further, since Aguilar's incarceration began, he has taken numerous steps to attempt to improve himself in "post-conviction rehabilitation." See Exhibit 3. This effort and its obvious achievements should be welcome news to this Honorable Court due to the fact that Aguilar has taken continuous strides to prepare himself for reentry back into society to be a law abiding citizen.

---

[13]

Natalie Hinton, Comment, *Curing the BOP Plague with Booker: Addressing the Inadequate Treatment in the Bureau of Prisons*, 41 J. Marshall L. Rev. 219, 231 (2007) (noting "BOP overpopulated and understaffed for years.")

In addition to Aguilar being a "minimal risk," he does note pose a danger to the safety of any other person or community if released. [See USSG § 1B1. 13(2)] Foreseeability of Extraordinary and Compelling Reasons. Aguilar does not dispute his crime was serious. However, it occurred 15 years ago; and his behavior while in custody should militate against a finding of future danger to any person, Aguilar has worked on himself and stayed out of trouble, and has been Drug-free for all these years, and wants so much better for himself, his family and the Community that we all live in. Aguilar has turned his Life to the (Lord), to always have peace and joy, in his heart, and to live a different life far away from drugs and crime. Aguilar has learned his lesson 100% without a doubt.

If granted compassionate release, Aguilar will reside with his parents, Kathy and Randy Miller, residing at 210 Shoreline Rd East Tawakoni, TX 75472– where he will be able to isolate himself and take the same precautionary measures that all Americans are taking: frequent hand washing, sanitizing his living space, and seeking medical care if necessary. None of these precautions are available in prison. Aguilar will receive medical care from his doctors, who are located near their home. Further information about these release plans upon request.

## V. CONCLUSION

For the foregoing reason, Aguilar prays this Court would consider his Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) and First Step Act of 2018, based upon the "extraordinary and compelling reasons" and reduce his sentence. Also, Aguilar respectfully requests this Court to consider BOP record, his medical condition, and his circumstances and join in recommending his release.

Respectfully submitted,

Dated: December 23, 2020.

ANTHONY STEVEN AGUILAR
REG. NO. 33985-177
FMC BUTNER
FEDERAL MEDICAL CENTER
P.O. BOX 1600
BUTNER, NC 27509
Appearing *Pro Se*

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2020, a true and correct copy of the above and foregoing Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) and First Step Act of 2018 was sent via U. S. Mail, postage prepaid, Alex C. Lewis, Assistant U.S. Attorney at U.S. Attorney's Office, 801 Cherry Street Suite 1700, Fort Worth, TX 76102-6882.

ANTHONY STEVEN AGUILAR

40

<u>Attachments</u>

1)      In Forma Pauperis Declaration

2)      Inmate Trust Fund Account for Last 6 Months

3)      Affidavit for Residence

4)      Male Custody Classification Form

5)      Male PATTERN Risk Scoring

6)      Progress Report

7)      ~~Sentence Computation Data~~

8) Picture's of Residence

9. Home Confinement Papers
   Was Denied by Wardens

10. COVID-19 Hospitalization and Death by Age

11 Inmate Discipline Data

### **AFFIDAVIT OF KATHY MILLER**

My name is Kathy Miller. I am Anthony Aguilar's mother. I swear the foregoing statements are true.

Once Anthony is released he can live with me at my home address 210 Shoreline Rd. East Tawakoni, Texas 75472.

Anthony will have his own bedroom and bath. I will provide any and all care on his behalf. Any appointments that is required of him. I will provide transportation to and from.

Signed this _23_ day of _November_, 2020.



Kathy Miller

Personally appeared before me Kathy Miller on ___11.23.2020___

and affirms the above affidavit.

Notary Public for the State of Texas

HAYLEE LONDON
Notary ID #132538306
My Commission Expires
June 25, 2024

```
  PPG7
```

```
 BUHEA  606.00 *     MALE CUSTODY CLASSIFICATION FORM      *      10-01-2020
 PAGE 001 OF 001                                                  10:16:48
                          (A) IDENTIFYING DATA
 REG NO..: |33985-177|          FORM DATE: 10-01-2020        ORG: BUH
 NAME....: AGUILAR, ANTHONY STEVEN
                                        MGTV: NONE
 PUB SFTY: SENT LGTH                    MVED:
                          (B) BASE SCORING
 DETAINER: (0) NONE              SEVERITY.......: (3) MODERATE
 MOS REL.: 129                   CRIM HIST SCORE: (00) 1 POINT
 ESCAPES.: (0) NONE              VIOLENCE.......: (1) > 10 YRS MINOR
 VOL SURR: (0) N/A               AGE CATEGORY...: (2) 36 THROUGH 54
 EDUC LEV: (0) VERFD HS DEGREE/GED  DRUG/ALC ABUSE.: (0) NEVER/>5 YEARS
                          (C) CUSTODY SCORING
 TIME SERVED.....: (4) 26-75%    PROG PARTICIPAT: (1) AVERAGE
 LIVING SKILLS...: (2) GOOD      TYPE DISCIP RPT: (5) NONE
 FREQ DISCIP RPT.: (3) NONE      FAMILY/COMMUN..: (4) GOOD


                   --- LEVEL AND CUSTODY SUMMARY ---

 BASE CUST VARIANCE  SEC TOTAL  SCORED LEV MGMT SEC LEVEL  CUSTODY  CONSIDER
 +6   +19    -3        +3         LOW        N/A              IN     DECREASE


 G0005       TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```

# MALE PATTERN RISK SCORING

| Register Number: | 33985-177 | Date: | 10/1/2020 |
|---|---|---|---|
| Inmate Name: | AGUILAR, Anthony Steven | | |

| MALE RISK ITEM SCORING | CATEGORY | GENERAL SCORE | Enter Score | VIOLENT SCORE | Enter Score |
|---|---|---|---|---|---|
| **1. Current Age** 41-50 Click on gray dropdown box to select, then click on dropdown arrow | > 60 | 0 | **14** | 0 | **8** |
| | 51-60 | 7 | | 4 | |
| | 41-50 | 14 | | 8 | |
| | 30-40 | 21 | | 12 | |
| | 26-29 | 28 | | 16 | |
| | < 26 | 35 | | 20 | |
| **2. Walsh w/ Conviction** No | No | 0 | **0** | 0 | **0** |
| | Yes | 1 | | 0 | |
| **3. Violent Offense (PATTERN)** No | No | 0 | **0** | 0 | **0** |
| | Yes | 5 | | 5 | |
| **4. Criminal History Points** 0 - 1 Points | 0 - 1 Points | 0 | **0** | 0 | **0** |
| | 2 - 3 Points | 8 | | 4 | |
| | 4 - 6 Points | 16 | | 8 | |
| | 7 - 9 Points | 24 | | 12 | |
| | 10 - 12 Points | 32 | | 16 | |
| | > 12 Points | 40 | | 20 | |
| **5. History of Escapes** None | None | 0 | **0** | 0 | **0** |
| | > 10 Years Minor | 2 | | 1 | |
| | 5 - 10 Years Minor | 4 | | 2 | |
| | < 5 Years Minor/Any Serious | 6 | | 3 | |
| **6. History of Violence** > 10 Years Minor | None | 0 | **1** | 0 | **1** |
| | > 10 Years Minor | 1 | | 1 | |
| | > 15 Years Serious | 2 | | 2 | |
| | 5 - 10  Years Minor | 3 | | 3 | |
| | 10 - 15 Years Serious | 4 | | 4 | |
| | < 5 Years Minor | 5 | | 5 | |
| | 5 - 10 Years Serious | 6 | | 6 | |
| | < 5 Years Serious | 7 | | 7 | |
| **7. Education Score** HS Degree / GED | Not Enrolled | 0 | **-4** | 0 | **-2** |
| | Enrolled in GED | -2 | | -1 | |
| | HS Degree / GED | -4 | | -2 | |
| **8. Drug Program Status** No Need | No DAP Completed | 0 | **-9** | 0 | **-3** |
| | NRDAP Complete | -3 | | -1 | |
| | RDAP Complete | -6 | | -2 | |
| | No Need | -9 | | -3 | |
| **9. All Incident Reports   (120 months)** 0 | 0 | 0 | **0** | 0 | **0** |
| | 1 | 1 | | 1 | |
| | 2 | 2 | | 2 | |
| | > 2 | 3 | | 3 | |
| **10. Serious Incident Reports  (120 months)** 0 | 0 | 0 | **0** | 0 | **0** |
| | 1 | 2 | | 2 | |
| | 2 | 4 | | 4 | |
| | > 2 | 6 | | 6 | |
| **11. Time Since Last Incident Report** 12+ months or no incidents | 12+ months or no incidents | 0 | **0** | 0 | **0** |
| | 7-12 months | 2 | | 1 | |
| | 3-6 months | 4 | | 2 | |
| | <3 | 6 | | 3 | |
| **12. Time Since Last Serious Incident Report** 12+ months or no incidents | 12+ months or no incidents | 0 | **0** | 0 | **0** |
| | 7-12 months | 1 | | 2 | |
| | 3-6 months | 2 | | 4 | |
| | <3 | 3 | | 6 | |
| **13. FRP Refuse** NO | NO | 0 | **0** | 0 | **0** |
| | YES | 1 | | 1 | |
| **14. Programs Completed** 2 - 3 | 0 | 0 | **-4** | 0 | **-2** |
| | 1 | -2 | | -1 | |
| | 2 - 3 | -4 | | -2 | |
| | 4 - 10 | -6 | | -3 | |
| | > 10 | -8 | | -4 | |
| **15. Work Programs** >1 Program | 0 Programs | 0 | **-2** | 0 | **-2** |
| | 1 Program | -1 | | -1 | |
| | >1 Program | -2 | | -2 | |
| Total Score (Sum of Columns) | | General: | **-4** | Violent: | **0** |
| General/Violent Risk Levels | | General: | Minimum | Violent: | Minimum |
| OVERALL MALE PATTERN RISK LEVEL | | | | **Minimum** | |



### Summary Reentry Plan - Progress Report
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: AGUILAR, ANTHONY STEVEN  33985-177

SEQUENCE: 00197863
Report Date: 08-20-2020



| | | | |
|---|---|---|---|
| Facility: | BUH  BUTNER FMC | Custody Level: | IN |
| Name: | AGUILAR, ANTHONY | Security Level: | LOW |
| Register No.: | 33985-177 | Proj. Rel Date: | 07-18-2031 |
| Quarters: | C03-317L | Release Method: | GCT REL |
| Age: | 46 | DNA Status: | BMM02838 / 02-12-2010 |
| Date of Birth: | 12-25-1973 | | |

## Contact Information
**Release contact & address**
KATHY  MILLER, MOTHER
210 Shoreline Rd., East Tawakoni, TX 75472 US
Phone (home) : 214-592-3138

## Offenses and Sentences Imposed

| Charge | Terms In Effect |
|---|---|
| 21:846 & 841(A)(1) & (B)(1)(A); CONSPIRACY TO POSSESS WITH INTENT TO DISTRIBUTE AND TO DISTRIBUTE MORE THAN 50 GRAMS OF PURE METHAMPHETAMINE. | 360 MONTHS |

Date Sentence Computation Began:  06-30-2006
Sentencing District:   TEXAS, NORTHERN DISTRICT

| Days FSGT / WSGT / DGCT | Days GCT or EGT / SGT | Time Served | + Jail Credit  - InOp Time |
|---|---|---|---|
| 0 /   0 /   0 | 756 | Years: 14 Months: 7 Days: | + 188   JC - 0    InOp |

## Detainers

| Detaining Agency | Remarks |
|---|---|
| *NO DETAINER* | |

## Program Plans

Inmate Aguilar arrived at FMC Butner on September 4, 2019, as a transfer from another facility.  He required medical treatment not available at his previous facility.  Although he has been unable to work, and has not participated in available programs at this facility, he is also noted to have maintained clear conduct.  He is respectful towards staff and is not considered a management concern.

## Current Work Assignments

| Facl | Assignment | Description | Start |
|---|---|---|---|
| BUH | UNASSIGNED | NO WORK ASSIGNMENT | 12-21-2019 |

## Work Assignment Summary

Inmate Aguilar has not maintained employment since his arrival at FMC Butner due to his medical concerns.  He is noted to have help previous employment as an orderly and in UNICOR (Federal Prison Industries), along with General Maintenance and Food Service.  He consistently received above average work evaluations.

## Current Education Information

| Facl | Assignment | Description | Start |
|---|---|---|---|
| BUH | ESL HAS | ENGLISH PROFICIENT | 09-08-2006 |
| BUH | GED HAS | COMPLETED GED OR HS DIPLOMA | 09-13-2006 |

## Education Courses

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| TEX | C | LIFE IN THE UNIVERSE | 09-29-2018 | 11-27-2018 |
| TEX | C | BASIC MOTOR LEARNING | 10-02-2018 | 11-16-2018 |
| TEX | C | COMPUTER APP 5:30P-8:30P M-THU | 02-27-2018 | 02-16-2018 |
| TEX | C | HEALTH FAIR-VARIOUS TOPICS | 07-12-2017 | 07-12-2017 |
| TEX | C | ULTRA KEY TYPING 8:30A-9:30A | 09-26-2016 | 11-07-2016 |
| TEX | C | BEGINNER'S FRENCH | 08-01-2016 | 10-04-2016 |
| TEX | C | SPANISH VOCABULARY | 03-14-2016 | 05-18-2016 |



### Summary Reentry Plan - Progress Report
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: AGUILAR, ANTHONY STEVEN  33985-177

SEQUENCE: 00197863
Report Date: 08-20-2020

| SubFacl | Action | Description | Start | Stop |
|---------|--------|-------------|-------|------|
| TEX | C | PARENTING,2:35-3:25 MON-FRI SS | 09-14-2015 | 10-27-2015 |
| TEX | C | ELECTRONIC LAW LIB 230-330 FRI | 12-23-2014 | 12-23-2014 |
| BMM | C | CDL ACE CLASS,RPP CT2 | 06-11-2014 | 08-05-2014 |
| BMM | C | JOB INTERVIEWING,RPP CT2 | 01-21-2014 | 03-27-2014 |
| BMM | C | RESUME WRITING CLASS,RPP CT2 | 01-21-2014 | 03-27-2014 |
| BMM | C | MICROCOMPUTER VT PM, RPP CT1 | 09-11-2012 | 01-17-2013 |
| BMM | C | ACE REAL ESTATE CLASS | 03-14-2008 | 04-23-2008 |
| BMM | C | 40 HOUR DRUG EDUCATION COURSE | 12-20-2006 | 03-06-2007 |
| BMM | C | HIV/AIDS/STDS AND DRUG USE | 02-08-2007 | 02-08-2007 |

#### Education Information Summary

Inmate Aguilar has not participated in any available programs since his arrival at FMC Butner. He is noted to have participated in numerous programs throughout this term of incarceration.

### Discipline Reports

| Hearing Date | Prohibited Acts |
|--------------|-----------------|
| 09-26-2006 | 307 : REFUSING TO OBEY AN ORDER |
| | 321 : INTERFERING WITH TAKING COUNT |

#### Discipline Summary

Inmate Aguilar has received one minor incident report during this term of incarceration. He is also noted to have maintained clear conduct for approximately 14 years. He has adjusted well to this term of incarceration.

### ARS Assignments

| Facl | Assignment | Reason | Start | Stop |
|------|-----------|--------|-------|------|
| BUH MS | A-DES | OTHER AUTH ABSENCE RETURN | 12-21-2019 | CURRENT |
| BUH MS | A-DES | TRANSFER RECEIVED | 09-04-2019 | 12-20-2019 |
| TEX | A-DES | OTHER AUTH ABSENCE RETURN | 02-20-2019 | 09-04-2019 |
| TEX | A-DES | OTHER AUTH ABSENCE RETURN | 09-27-2018 | 02-19-2019 |
| TEX | A-DES | OTHER AUTH ABSENCE RETURN | 06-14-2018 | 09-27-2018 |
| TEX | A-DES | OTHER AUTH ABSENCE RETURN | 03-09-2018 | 06-14-2018 |
| TEX | A-DES | OTHER AUTH ABSENCE RETURN | 02-19-2018 | 03-09-2018 |
| TEX | A-DES | OTHER AUTH ABSENCE RETURN | 02-07-2018 | 02-19-2018 |
| TEX | A-DES | OTHER AUTH ABSENCE RETURN | 08-24-2017 | 02-06-2018 |
| TEX | A-DES | OTHER AUTH ABSENCE RETURN | 08-02-2017 | 08-24-2017 |
| TEX | A-DES | OTHER AUTH ABSENCE RETURN | 05-22-2017 | 08-01-2017 |
| TEX | A-DES | OTHER AUTH ABSENCE RETURN | 04-27-2017 | 05-22-2017 |
| TEX | A-DES | OTHER AUTH ABSENCE RETURN | 04-11-2016 | 04-27-2017 |
| TEX | A-DES | TRANSFER RECEIVED | 12-04-2014 | 04-11-2016 |
| BMM | A-DES | OTHER AUTH ABSENCE RETURN | 07-07-2014 | 11-25-2014 |
| BMM | A-DES | OTHER AUTH ABSENCE RETURN | 01-22-2014 | 07-07-2014 |
| BMM | A-DES | OTHER AUTH ABSENCE RETURN | 08-14-2013 | 01-22-2014 |
| BMM | A-DES | OTHER AUTH ABSENCE RETURN | 06-14-2013 | 08-14-2013 |
| BMM | A-DES | OTHER AUTH ABSENCE RETURN | 05-12-2011 | 06-14-2013 |
| BMM | A-DES | OTHER AUTH ABSENCE RETURN | 01-31-2011 | 05-12-2011 |
| BMM | A-DES | OTHER AUTH ABSENCE RETURN | 01-05-2011 | 01-31-2011 |
| BMM | A-DES | OTHER AUTH ABSENCE RETURN | 03-04-2010 | 01-05-2011 |
| BMM | A-DES | OTHER AUTH ABSENCE RETURN | 11-16-2009 | 03-04-2010 |
| BMM | A-DES | OTHER AUTH ABSENCE RETURN | 07-13-2009 | 11-16-2009 |
| BMM | A-DES | OTHER AUTH ABSENCE RETURN | 06-19-2009 | 07-13-2009 |
| BMM | A-DES | OTHER AUTH ABSENCE RETURN | 03-26-2009 | 06-19-2009 |
| BMM | A-DES | OTHER AUTH ABSENCE RETURN | 09-04-2008 | 03-26-2009 |
| BMM | A-DES | OTHER AUTH ABSENCE RETURN | 04-23-2008 | 09-04-2008 |
| BMM | A-DES | US DISTRICT COURT COMMITMENT | 08-29-2006 | 04-23-2008 |

#### Current Care Assignments

| Assignment | Description | Start |
|------------|-------------|-------|



## Summary Reentry Plan - Progress Report

Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: AGUILAR, ANTHONY STEVEN  33985-177

SEQUENCE: 00197863
Report Date: 08-20-2020

| Assignment | Description | Start |
|---|---|---|
| CARE1-MH | CARE1-MENTAL HEALTH | 06-24-2010 |
| CARE4 | MRC CARE REQUIRED | 07-26-2019 |

### Current Medical Duty Status Assignments

| Assignment | Description | Start |
|---|---|---|
| LOS | LENGTH OF STAY | 09-12-2019 |
| OTHER | OTHER MEDICAL RESTRICTION | 02-12-2020 |
| PAPER | LEGACY PAPER MEDICAL RECORD | 11-08-2018 |
| REG DUTY | NO MEDICAL RESTR--REGULAR DUTY | 02-20-2019 |
| YES F/S | CLEARED FOR FOOD SERVICE | 12-04-2014 |

### Current PTP Assignments

| Assignment | Description | Start |
|---|---|---|

*NO ASSIGNMENTS*

### Current Drug Assignments

| Assignment | Description | Start |
|---|---|---|
| DRG E COMP | DRUG EDUCATION COMPLETED | 03-06-2007 |

### Physical and Mental Health Summary

Inmate Aguilar is a Care 1 mental health inmate, with no significant mental health concerns.  He is assigned as a Care 4 medical inmate, with medical concerns requiring regular care.

### FRP Details

Most Recent Payment Plan

**FRP Assignment:**    **COMPLT**    **FINANC RESP-COMPLETED**        **Start: 01-16-2007**

Inmate Decision:    **AGREED**        **$50.00**        Frequency: **MONTHLY**
Payments past 6 months:        **$0.00**        Obligation Balance: **$0.00**

**Financial Obligations**

| No. | Type | Amount | Balance | Payable | Status |
|---|---|---|---|---|---|
| 1 | ASSMT | $100.00 | $0.00 | IMMEDIATE | COMPLETEDZ |

*** NO ADJUSTMENTS MADE IN LAST 6 MONTHS ***

### Financial Responsibility Summary

Inmate Aguilar has fulfilled his financial obligation to the court.

### Release Planning

Inmate Aguilar intends to reside with his mother upon his release.  He will not require a relocation of supervision.

### General Comments

Inmate Aguilar maintains a good rapport with staff and inmates alike.  He has participated in multiple programs throughout this term of incarceration.  He has adjusted well, only receiving one minor infraction throughout this term.



**Summary Reentry Plan - Progress Report**
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: AGUILAR, ANTHONY STEVEN 33985-177

SEQUENCE: 00197863
Report Date: 08-20-2020

Name: AGUILAR, ANTHONY STEVEN
Register Num: 33985-177
Age: 46
Date of Birth: 12-25-1973
DNA Status: BMM02838 / 02-12-2010

X _Anthony S Aguilar_
Inmate    (AGUILAR, ANTHONY STEVEN, Register Num: 33985-177)

_8/20/2020_
Date

_Chairperson_

_8/20/2020_
Date

_Case Manager_

_8/20/2020_
Date







BP-A0434    COMMUNITY BASED PROGRAM AGREEMENT CDFRM
JUNE 10

**U.S. DEPARTMENT OF JUSTICE**       **FEDERAL BUREAU OF PRISONS**

I, AGUILAR, ANTHONY STEVEN , Register Number, 33985-177 , hereby
authorize employers of the Department of Justice and employees of any facility contracting with the Department of Justice
to release any or all of the contents of information in my inmate central file to educational facilities, social agencies,
prospective employees, etc., for the purpose of assisting in all phases of community programming and release planning.
I also authorize the above persons to advise prospective employers that I am currently in the custody of the U.S. Attorney
General serving sentence or under the supervision of the U.S. Parole Commission or U.S. Probation Office.  This consent
will remain in effect until my release from supervision or until revoked in writing by me.  Revocation of this
authorization may result in my removal from a community-based correctional program.

I understand that while a resident of a residential reentry center or work release program I will be expected to contribute
to the cost of my residence through payments to the contractor and I agree to make such payments.  I understand that
failure to make payments may result in my removal from a community-based program (Not applicable for MINT referrals).

I understand that urinalysis or other Bureau of Prisons authorized testing to detect unauthorized drug or alcohol use may
be required as a condition of residence in a residential reentry center or work release program, and if required, I agree
to submit to such testing. I understand that ingestion of poppy seed products may result in positive test results for
unauthorized drug use and is therefore prohibited.

I understand that no non-emergency medical care may be provided to me at the Bureau's expense without prior authorization
of the BOP. I understand that, as part of my transition to release, I am expected to assume increased responsibility for
my health care while I am a resident of a community-based correctional program.

I also understand that I may be transferred by the BOP to a suitable institution or facility at the Bureau's option for
medical care should the Government deem it necessary.

I understand that I may be required to undergo clinical assessment and may be required to participate in treatment, e.g.
mental health/psychiatric treatment, substance abuse treatment, sex offender treatment, recommended as a result of the
assessment. I understand that failure to abide by treatment program recommendations may result in my return to a secure
facility.

I understand that I may be required to abide by the conditions of supervision as imposed by the sentencing court or the
U.S. Parole Commission, including the payments of fines and restitution and to follow the instructions of the probation
officer as if on supervision.

I understand that upon arrival at the residential reentry center I may be initially placed in the restrictive Community
Corrections Component for a period of orientation.  In this component, I will be expected to remain at the RRC unless
authorized to leave for employment or other authorized program purposes.  Additionally, I understand that social visits
and recreational/leisure activities will be confined to the RRC.

I understand that while a resident of a residential reentry center or work release program I will be required to abide
by the rules and regulations promulgated by such program.

For MINT referrals, I understand that I or the guardian shall assume total financial responsibility for my child's care
while I am a resident of a RRC.  Should I or the guardian be unable or unwilling to bear my child's financial cost, I will
be transferred back to my parent institution immediately.  I understand that no financial support will be provided to my
child by the Bureau of Prisons.

PART II

In the event that I am approved for Home Detention, I agree to abide by the following conditions related to my legal
participation in Home Detention.

I understand that my participation in Home Detention will be an alternative to placement in a RRC for no more than the
last six months or 10% of my sentence, whichever is less.  I am aware that I will legally remain in the custody of the
Bureau of Prisons and/or the U.S. Attorney General and that failure to remain at the required locations may result in
disciplinary action and/or prosecution for escape.

I agree to report to my assigned probation officer or the contractor's facility immediately upon reaching my release
destination.

I understand that if I decline to participate in the recommended Home Detention program I may face administrative
reassignment out of the residential reentry program.

I agree that during the Home Detention period, I will remain at my place of residence, except for employment, unless I
am given permission to do otherwise.  I also understand that I will be required to pay the costs of the program based on
my ability to pay.

I also agree to maintain a telephone at my place of residence without "call forwarding," or "three-way calling" for this
period.  I also agree that if instructed to do so, as a condition of Home Detention, I will not have access to a computer
with a modem or other device for accessing the internet.  I also agree that if my confinement is to be electronically
monitored, I will wear any electronic monitoring device required, follow procedures specified, and comply with any
telephone and computer access restrictions as they apply to the monitoring device requirements.

AGUILAR, ANTHONY STEVEN  _Anthony S. Aguilar_    5/19/20
Inmate's Printed Name and Signature            Date

M. CARWIN  _M. Carwin_        5/19/20
Witness' Printed Name and Signature          Date

Record Copy - CCM; Copy - CCM; Copy - Central File

PDF          Prescribed by P7310      Replaces BP-S434.073 dtd DEC 95

BP-A0460
JUNE 10
U.S. DEPARTMENT OF JUSTICE

CONDITIONS OF HOME DETENTION        CDFRM

FEDERAL BUREAU OF PRISONS

| Resident AGUILAR, ANTHONY STEVEN | Register Number 33985-177 |

I understand that my placement on Home Detention status is a privilege which may be revoked by the Community Corrections Manager (CCM). I understand that any violation of Home Detention Conditions, or conduct or activity which reflects a disregard for the rights of others, shall be sufficient cause to revoke my Home Detention and/or terminate my Residential Re-Entry Center (RRC) program participation.

I understand and agree to abide by the following conditions during my period of Home Detention:

1.  I will reside at my approved residence at 6553 STATE PARK  LONE OAK, TX 75453 .

2.  I will conduct myself in a lawful manner.

3.  I will accept phone calls from RRC/Probation Staff, verifying my presence at my home and at my job site. I agree to maintain a telephone at my place of residence without "call forwarding," or "three-way calling" for this period and will, when requested, provide copies of my telephone bill to the Center/Probation staff. I also agree that if my confinement is to be electronically monitored, I will wear any electronic monitoring device required, follow procedures specified, and comply with any telephone and computer access restrictions as they apply to the monitoring device requirements.

4.  I will accept the visits of RRC/Probation personnel to my job site and home.

5.  I will return to the RRC/Probation at least _____ weekly for routine progress reviews and program participation, and more often if instructed to do so.

6.  I understand I must continue mental health/psychiatric treatment, substance abuse treatment, sex offender treatment while on Home Detention.

7.  I will not own or possess any deadly weapon or knowingly be in the company of a person possessing the same.

8.  I will remain steadily employed at _____ and will not change employment without prior approval of RRC/Probation staff

9.  I will not knowingly associate with persons having a criminal record, nor frequent places where illegal activities are conducted.

10. I will not drink alcoholic beverages of any kind; nor will I enter any establishments, such as bars or liquor stores, where the sale and/or consumption of alcoholic beverages on the premises is the primary business of the establishment.

11. Except as medically authorized, I will not use or possess narcotics, or other controlled substances, nor be in the presence of persons possessing the same.

12. I agree that during the Home Detention period, I will remain at my place of residence, except for employment, unless I am given specific permission to do otherwise.

13. I will not own or drive a motor vehicle without proper authorization.

14. I will abide by special instructions given to me by the RRC/Probation, e.g., electronic monitoring program participation.

15. I will submit to urinalysis or alcohol testing as requested by the RRC/Probation. I understand that ingestion of poppy seed food products may result in positive test results for unauthorized drug use and is therefore prohibited.

16. I agree to pay subsistence for the cost of my participation in Home Detention.

17. I understand that I am personally responsible for all costs of my housing, meals, and general subsistence, while I am on Home Detention.

I fully understand that willful failure to report as required, unauthorized change of residence, employment, or failure to otherwise inform Center staff of my whereabouts, could constitute an escape from federal custody.

| Resident's Signature *(signature)* | Date | 05/19/2020 |
| Approved (RRC Director) | | |
| Approved (CCM) | | |

Record Copy - To CCM - Community Corrections Manager; Copy - To RRC - Residential Re-Entry Center; Copy - To USPO - U.S. Probation Officer

C 317

BP-A0522
JUNE 10

**SUPERVISION RELEASE PLAN** CDFRM

U.S. DEPARTMENT OF JUSTICE

FEDERAL BUREAU OF PRISONS

| Institution Name: BUTNER FMC<br>Address: P.O. BOX 1600<br>        BUTNER, NC 27509<br><br>Phone Number: (919)575-3900 | Date<br>05/19/2020 |
|---|---|

Under the law I become eligible for:

- [x] Supervised Release
- [ ] Parole          on     07/18/2031    .
- [ ] Mandatory Release            (Date)

I submit the following as my plans for the service of the remainder of my sentence under supervision. Pursuant to my sentence, I must report in person to the United States Probation Office within 72 hours of my release.

| Residence | |
|---|---|
| ADDRESS | 6553 STATE PARK, LONE OAK, TX 75453, US |
| WITH WHOM<br>RELATIONSHIP | MOTHER, KATHY MILLER |
| TELEPHONE | home 214-592-3138 |

| Employment | |
|---|---|
| COMPANY AND<br>SUPERVISOR'S NAME | |
| ADDRESS | |
| TELEPHONE | |
| NATURE OF BUSINESS | |

| TO BE COMPLETED BY INSTITUTION STAFF | |
|---|---|
| SENTENCING DISTRICT | TEXAS, NORTHERN DISTRICT |
| RELOCATION DISTRICT | |
| DETAINERS | N/A |
| SPECIAL CONDITIONS | |
| REMARKS | He is being referred for early release under the provisions of the<br>CARES ACT. |

| Printed Name and Signature of Inmate<br>AGUILAR, ANTHONY STEVEN | Register No.<br>33985-177 |
|---|---|
| Witness (Case Manager) Printed Name and Signature<br>M. Earwin | Date<br>05/19/2020 |
| Review (Unit Manager) Printed Name and Signature<br>M. Earwin | Date<br>05/19/2020 |

This form is to be completed by all individuals subject to supervision by the U.S. Probation Office or Court Service and Offender Supervision Agency for the District of Columbia. This includes Supervised Release, Parole, Mandatory Release, Mandatory Release to Special Parole, Special Parole and Court Designated Parole.

Record Copy - Institution; Copy - U.S. Probation Office; Copy - Inmate

FILE IN SECTION 5 UNLESS APPROPRIATE FOR PRIVACY FOLDER          **SECTION 5**

PDF          Prescribed by P5321          This form replaces BP-522 DTD SEP 99

BP-A0548
JUN 10

**HOME CONFINEMENT AND COMMUNITY CONTROL
AGREEMENT**

U.S. DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF PRISONS

I, AGUILAR, ANTHONY STEVEN                          33985-177

_____Name_____                          _____Register Number_____

hereby agree to abide by the following Conditions related to my legal participation on home confinement.

I understand that my participation on home confinement will be an alternative to placement in a Community Corrections Center for no more than the last six (6) months or 10% of my sentence, whichever is less. I am aware that I will legally remain in the custody of the Bureau of Prisons and/or the U.S. Attorney General and that failure to remain at the required locations may result in disciplinary action and/or prosecution for escape.

I agree to report to my assigned probation officer or the contractor's facility immediately upon reaching my release destination.

I understand that if I decline to participate in the recommended home confinement program I may face administrative reassignment out of the community corrections program.

I agree that during the home confinement period, I will remain at my place of residence, except for employment, unless I am given permission to do otherwise. I also understand that I will be required to pay the costs of the program based on my ability to pay.

I also agree to maintain a telephone at my place of residence without "call forwarding", a modem, "Caller ID" or portable cordless telephones for this period.

I also agree that, if my confinement is to be electronically monitored, I will wear any electronic monitoring device required, following procedures specified and will not have "call forwarding" on my telephone.

| Inmate's Name | Date |
|---|---|
| AGUILAR, ANTHONY STEVEN | 05/19/2020 |

| Staff Witness (Printed Name and Signature) | Facility |
|---|---|
| M. EARWIN / M. Earwin | BUTNER FMC |

PDF

Prescribed by P7320

Attachments 10

# COVID-19 Hospitalization and Death by Age
## Hospitalization and Death by Age

Updated Aug. 18, 2020          Print

---

# Rate ratios compared to 18–29 year olds

|  | Hospitalization[1] | Death[2] |
|---|---|---|

## Coronavirus Disease 2019 (COVID-19)



| Age | Hospitalization[1] | Death[2] |
|---|---|---|
| 5-17 years | 9x lower | 16x lower |
| 18-29 years | Comparison Group | Comparison Group |
| 30-39 years | 2x higher | 4x higher |
| 40-49 years | 3x higher | 10x higher |
| 50-64 years | 4x higher | 30x higher |
| 65-74 years | 5x higher | 90x higher |
| 75-84 years | 8x higher | 220x higher |
| 85+ years | 13x higher | 630x higher |

# Factors that increase community spread and individual risk







Crowded Situations          Close/physical contact          Enclosed space          Duration of exposure

# Actions to reduce risk of COVID–19






```
   BUHEA          *       INMATE DISCIPLINE DATA        *      09-23-2020
PAGE 001 OF 001 *   CHRONOLOGICAL DISCIPLINARY RECORD    *      17:00:50

REGISTER NO: 33985-177 NAME..: AGUILAR, ANTHONY STEVEN
FUNCTION...: PRT      FORMAT: CHRONO    LIMIT TO ___ MOS PRIOR TO 09-23-2020

---------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 1516490 ~ SANCTIONED INCIDENT DATE/TIME: 09-23-2006 1000
UDC HEARING DATE/TIME: 09-26-2006 1650
FACL/UDC/CHAIRPERSON.: BMM/N/GIBSON
REPORT REMARKS.......: INMATE STATES THE OFFICER DID NOT GIVE HIM A CHANCE TO
                       GET TO CELL.
   307  REFUSING TO OBEY AN ORDER - FREQ: 1
        LP PHONE   / 15 DAYS / CS
        COMP:    LAW:    START 09-27-2006
                         END 10-11-2006
   321  INTERFERING WITH TAKING COUNT - FREQ: 1
        LP PHONE   / 15 DAYS / CS
        COMP:    LAW:    START 10-12-2006
                         END 10-26-2006
```

```
G0005        TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```

## EXHIBIT 1:
### "Medical Documents"

# Bureau of Prisons
## Health Services
## Clinical Encounter

| | | | |
|---|---|---|---|
| Inmate Name: AGUILAR, ANTHONY STEVEN | | Reg #: | 33985-177 |
| Date of Birth: 12/25/1973 | Sex: M   Race: WHITE | Facility: | BUH |
| Encounter Date: 08/31/2020 11:23 | Provider: Duchesne, C. MD | Unit: | C03 |

Chronic Care - Chronic Care Clinic encounter performed at Health Services.

**SUBJECTIVE:**

COMPLAINT  1          Provider:   Duchesne, C. MD

Chief Complaint:   Pain
Subjective:   46 y/o HM with hx of HTN, OA, and Chronic Constipation who came today for CCC.

Patient came complaining of pain in his joints including knees, shoulders, elbows, etc. He believes the pain is due to OA as he was told before and confirmed by X-rays in the past. He is requesting to go back to the Meloxicam as OTC Ibuprofen "makes my urine burn". He thinks this pain is directly related to years of Meth and other designer drugs abuse.
Right shoulder surgery was performed and he was able to complete PT rehab successfully.
Patient states been compliant with the Lisinopril and his BP is been WNL every time HE takes it (?). The constipation remains a major problem for him. He requires medications to move his bowels and even drinking "tons" of water is not helping, so he wants to continue current meds.

Denies chest pain, shortness of breath, cough, fever, chills, N/V, diarrheas, headaches, palpitations, dizziness, weakness, fatigue, blurred vision, or slurred speech.

**Pain:** Yes

**Pain Assessment**

| | |
|---|---|
| Date: | 08/31/2020 11:52 |
| Location: | Multiple Locations |
| Quality of Pain: | Aching |
| Pain Scale: | 6 |
| Intervention: | meds |
| Trauma Date/Year: | |
| Injury: | |
| Mechanism: | |
| Onset: | 5+ Years |
| Duration: | 5+ Years |
| Exacerbating Factors: | immobility |
| Relieving Factors: | NSAIDs |
| Reason Not Done: | |
| Comments: | Probably Meth induce arthritis |

**Seen for clinic(s):** Gastrointestinal, Hypertension, Orthopedic/Rheumatology

**ROS:**

**General**

**Constitutional Symptoms**

No: Anorexia, Chills, Easily Tired, Fatigue, Fever, Weakness, Weight Gain

**Cardiovascular**

**General**

Yes: Hx Hypertension
No: Angina, Cold Extremities, Cough, Cyanosis, Edema, Exertional dyspnea, Palpitation, Syncope, Hx Murmur, Hx of Hyperlipidemia

Inmate Name:   AGUILAR, ANTHONY STEVEN
Date of Birth:   12/25/1973                          Sex:   M   Race:   WHITE          Facility:   BUH
Encounter Date:  08/31/2020 11:23                    Provider:  Duchesne, C. MD        Unit:   C03

## ROS:

### GI

#### General

Yes: Constipation

No: Abdominal Pain or Colic, Appetite Changes, Blood in Stools, Dyspepsia, Dysphagia, Hx of Hepatitis, Jaundice, Reflux, Weight Gain

## OBJECTIVE:

### Temperature:

| Date | Time | Fahrenheit | Celsius | Location | Provider |
|------|------|-----------|---------|----------|----------|
| 08/31/2020 | 09:55 BUX | 97.1 | 36.2 | | Rosario, C. LPN |

### Pulse:

| Date | Time | Rate Per Minute | Location | Rhythm | Provider |
|------|------|----------------|----------|--------|----------|
| 08/31/2020 | 09:55 BUX | 67 | | | Rosario, C. LPN |

### Respirations:

| Date | Time | Rate Per Minute | Provider |
|------|------|----------------|----------|
| 08/31/2020 | 09:55 BUX | 18 | Rosario, C. LPN |

### Blood Pressure:

| Date | Time | Value | Location | Position | Cuff Size | Provider |
|------|------|-------|----------|----------|-----------|----------|
| 08/31/2020 | 09:55 BUX | 130/79 | | | | Rosario, C. LPN |

### SaO2:

| Date | Time | Value(%) | Air | Provider |
|------|------|----------|-----|----------|
| 08/31/2020 | 09:55 BUX | 100 | | Rosario, C. LPN |

### Weight:

| Date | Time | Lbs | Kg | Waist Circum. | Provider |
|------|------|-----|-----|--------------|----------|
| 08/31/2020 | 11:27 BUX | 200.0 | 90.7 | | Duchesne, C. MD |

### Exam:

#### General

##### Affect

Yes: Pleasant, Cooperative

##### Appearance

Yes: Appears Well, Alert and Oriented x 3

No: Appears Distressed, Jaundiced, Dyspneic, Appears in Pain, Cyanotic, Diaphoretic, Acutely Ill

##### Nutrition

Yes: BMI reviewed (enter in comments), Excellent food intake

No: Appears Malnourished, Appears Obese

#### Exam Comments

BMI: 27.1
Alert, Afebrile, Active, Ambulating without Assistance.
Oriented x 3, does not look in pain (no grimace, etc.). No ill Appearance.
Patient seems comfortable during interview and exam.
Well nourished, no jaundiced, no obvious deformities.
HEENT- PERLA, no scleral petechiae, no nasal discharge, no oral thrush.
No JVD, neck supple with normal range of motion, no carotid bruits.
Heart- RRR, no murmurs, no gallops, no S3, no S4

| | | |
|---|---|---|
| Inmate Name: AGUILAR, ANTHONY STEVEN | | Reg #: 33905-177 |
| Date of Birth: 12/25/1973 | Sex: M Race: WHITE | Facility: BUH |
| Encounter Date: 08/31/2020 11:23 | Provider: Duchesne, C. MD | Unit: C03 |

Lungs- Clear to Auscultation, no wheezes, no crackles.
Abdomen- Not distended, BS+, S/D, non-tender, no rebound, no guarding.
Ext- Symmetric, no edema, no cyanosis.
Neuro- CN grossly intact, no apparent motor or sensory deficits.

**ASSESSMENT:**

Constipation, unspecified, 564.00 - Current - *Responding well to cathartics. Likely secondary to chronic pain meds, Meth and desig drugs abuse.*

Shoulder (pain in joint, shoulder region), 719.41 - Current - *To be followed by Ortho Team.*

Disorder of urinary system, unspecified, N399 - Resolved

Essential (primary) hypertension, I10 - Current - *Borderline control but asymptomatic. Responding to Lisinopril but compliance is st an issue. Educated about importance of control and compliance.*

Other specified postprocedural states, Z9889 - Current - *S/p Right reverse TSA 12/20/19.*

Viral wart, B079 - Resolved - *Right index finger.*

**PLAN:**

**Renew Medication Orders:**

| Rx# | Medication | Order Date |
|---|---|---|
| 1630144-BUX | Bisacodyl E.C. 5 MG TAB | 08/31/2020 11:23 |
| | **Prescriber Order:** Take one tablet (5 MG) by mouth at bedtime AS NEEDED for constipation PRN x 90 day(s) | |
| | Indication: Constipation, unspecified | |
| 1630145-BUX | Docusate Sodium 100 MG Cap | 08/31/2020 11:23 |
| | **Prescriber Order:** Take one capsule (100 MG) by mouth two times a day for constipation x 90 day(s) | |
| | Indication: Constipation, unspecified | |
| 1630146-BUX | Lisinopril 20 MG Tab | 08/31/2020 11:23 |
| | **Prescriber Order:** Take one tablet (20 MG) by mouth daily to control blood pressure x 365 day(s) | |
| | Indication: Essential (primary) hypertension | |
| 1630147-BUX | Senna 8.6 MG Tab | 08/31/2020 11:23 |
| | **Prescriber Order:** Take two tablets (17.2 MG) by mouth each day x 90 day(s) | |
| | Indication: Constipation, unspecified, Other specified postprocedural states | |
| 1605153-BUX | Meloxicam 7.5 MG Tab | 08/31/2020 11:23 |
| | **Prescriber Order:** Take one tablet (7.5 MG) by mouth each day with food for chronic unrelenting pain x 60 day(s) | |
| | Indication: Other specified postprocedural states | |

**New Laboratory Requests:**

| Details | Frequency | Due Date | Priority |
|---|---|---|---|
| Lab Tests - Short List-General-CBC w/diff | One Time | 04/13/2021 00:00 | Routine |
| Lab Tests - Short List-General-Lipid Profile | | | |
| Lab Tests - Short List-General-Comprehensive Metabolic Profile (CMP) | | | |

Inmate Name:  AGUILAR, ANTHONY STEVEN
Date of Birth:  12/25/1973                    Sex:    M    Race:  WHITE        Facility:  BUH
Encounter Date:  08/31/2020 11:23      Provider:  Duchesne, C. MD              Unit:     C03

**Disposition:**

Follow-up at Sick Call as Needed
Follow-up at Chronic Care Clinic as Needed

**Other:**

# Recommend to control excess water intake and to change to a balanced diet.

**Patient Education Topics:**

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 09/01/2020 | Counseling | Compliance - Treatment | Duchesne, C. | Verbalizes Understanding |
| 09/01/2020 | Counseling | Exercise | Duchesne, C. | Verbalizes Understanding |
| 09/01/2020 | Counseling | Hand & Respiratory Hygiene | Duchesne, C. | Verbalizes Understanding |

**Copay Required:** No          **Cosign Required:** No

**Telephone/Verbal Order:** No

Completed by Duchesne, C. MD on 09/01/2020 10:20

# Bureau of Prisons
# Health Services
# Clinical Encounter

| | | | | |
|---|---|---|---|---|
| Inmate Name: | AGUILAR, ANTHONY STEVEN | | Reg #: | 33985-177 |
| Date of Birth: | 12/25/1973 | Sex:    M    Race:  WHITE | Facility: | BUH |
| Encounter Date: | 12/23/2019 13:35 | Provider:  Everett, Chauna PA-C | Unit: | B05 |

Consultation - Initial visit encounter performed at Health Services.

**SUBJECTIVE:**

**COMPLAINT 1**       **Provider:** Everett, Chauna PA-C

**Chief Complaint:** ORTHOPEDIC/RHEUMATOLOGY

**Subjective:**    Ortho Status: Post Op
Right Reverse Total Shoulder Replacement
DOS: 12/30/2019
Dr. Wheeless

45 yo male with above procedure seen this am during rounds. Patient reports pain medication is not holding for the four hours until next dose. Denies nausea, vomiting, SOB or CP. Did note small bowel movement with history of constipation and requested a suppository in adjunct to medications.

**Pain:**    Yes

**Pain Assessment**

| | |
|---|---|
| **Date:** | 12/23/2019 10:24 |
| **Location:** | Shoulder-Right |
| **Quality of Pain:** | Aching |
| **Pain Scale:** | 9 |
| **Intervention:** | oxyCODONE HCl   5 MG Tab UD |
| **Trauma Date/Year:** | |
| **Injury:** | |
| **Mechanism:** | |
| **Onset:** | <30 Minutes |
| **Duration:** | <30 Minutes |
| **Exacerbating Factors:** | post surgery |
| **Relieving Factors:** | pain med |
| **Reason Not Done:** | |
| **Comments:** | |

**OBJECTIVE:**
**Temperature:**

| Date | Time | Fahrenheit | Celsius | Location | Provider |
|---|---|---|---|---|---|
| 12/23/2019 | 08:40 BUX | 97.6 | 36.4 | | Ward, Emad MD |
| 12/21/2019 | 17:15 BUX | 97.7 | 36.5 | | Ugochukwu, U. RN |
| 12/21/2019 | 16:19 BUX | 98.5 | 36.9 | | Johnson, Erica RN |
| 12/12/2019 | 10:45 BUX | 98.4 | 36.9 | | Simons, C. RN |

**Pulse:**

| Date | Time | Rate Per Minute | Location | Rhythm | Provider |
|---|---|---|---|---|---|
| 12/23/2019 | 08:40 BUX | 71 | | | Ward, Emad MD |

| | | | | |
|---|---|---|---|---|
| Inmate Name: | AGUILAR, ANTHONY STEVEN | | | Reg #:   33985-177 |
| Date of Birth: | 12/25/1973 | Sex:   M   Race:   WHITE | | Facility:   BUH |
| Encounter Date: | 12/23/2019 13:35 | Provider:   Everett, Chauna PA-C | | Unit:   B05 |

| Date | Time | Rate Per Minute | Location | Rhythm | Provider |
|---|---|---|---|---|---|
| 12/21/2019 | 17:15 BUX | 88 | | | Ugochukwu, U. RN |
| 12/21/2019 | 16:19 BUX | 100 | | | Johnson, Erica RN |
| 12/12/2019 | 10:45 BUX | 73 | | | Simons, C. RN |

**Respirations:**

| Date | Time | Rate Per Minute | Provider |
|---|---|---|---|
| 12/23/2019 | 08:40 BUX | 20 | Ward, Emad MD |
| 12/21/2019 | 17:15 BUX | 16 | Ugochukwu, U. RN |
| 12/21/2019 | 16:19 BUX | 20 | Johnson, Erica RN |
| 12/12/2019 | 10:45 BUX | 18 | Simons, C. RN |

**Blood Pressure:**

| Date | Time | Value | Location | Position | Cuff Size | Provider |
|---|---|---|---|---|---|---|
| 12/23/2019 | 08:40 BUX | 131/81 | | | | Ward, Emad MD |
| 12/21/2019 | 17:15 BUX | 121/71 | | | | Ugochukwu, U. RN |
| 12/21/2019 | 16:19 BUX | 123/81 | | | | Johnson, Erica RN |
| 12/12/2019 | 10:45 BUX | 117/75 | | | | Simons, C. RN |

**SaO2:**

| Date | Time | Value(%) | Air | Provider |
|---|---|---|---|---|
| 12/23/2019 | 08:40 BUX | 98 | | Ward, Emad MD |
| 12/21/2019 | 17:15 BUX | 95 | | Ugochukwu, U. RN |
| 12/21/2019 | 16:19 BUX | 98 | | Johnson, Erica RN |
| 12/12/2019 | 10:45 BUX | 100 | | Simons, C. RN |

**Weight:**

| Date | Time | Lbs | Kg | Waist Circum. | Provider |
|---|---|---|---|---|---|
| 12/12/2019 | 10:45 BUX | 213.0 | 96.6 | | Simons, C. RN |

**Exam Comments**

Right Shoulder
PICO dressing in place with strike through bleeding noted on NWPT sponge
Full range of motion at elbow / wrist
Grip 5/5
Distal pulses intact

**ASSESSMENT:**

Other specified postprocedural states, Z9889 - Current

**PLAN:**

**New Medication Orders:**

| Rx# | Medication | Order Date | Prescriber Order |
|---|---|---|---|
| | Docusate Sodium Capsule | 12/23/2019 13:35 | 100 mg Orally  -  Two Times a Day x 30 day(s) Pill Line Only |

**Indication:** Constipation, unspecified, Other specified postprocedural states

| Inmate Name: | AGUILAR, ANTHONY STEVEN | | | Reg #: | 33985-177 |
|---|---|---|---|---|---|
| Date of Birth: | 12/25/1973 | Sex: | M   Race: WHITE | Facility: | BUH |
| Encounter Date: | 12/23/2019 13:35 | Provider: | Everett, Chauna PA-C | Unit: | B05 |

**New Medication Orders:**

| Rx# | Medication | Order Date | Prescriber Order |
|---|---|---|---|
| | Senna Tablet | 12/23/2019 13:35 | 17.2 mg Orally -   daily x 30 day(s) -- for opiate induced constipation |

Indication: Constipation, unspecified, Other specified postprocedural states

| | Bisacodyl Suppository | 12/23/2019 13:35 | 10 mg Rectally -   daily PRN x 14 day(s) -- patient to insert rectally for constipation as needed |

Indication: Constipation, unspecified

| | oxyCODONE HCl Tablet | 12/23/2019 13:35 | 5mg Orally  every 4 hours PRN x 3 day(s) Pill Line Only -- for chronic unremitting pain level of 1-4 |

Indication: Other specified postprocedural states

Order Set Name: BUX Ortho Post-Op Orders - v2

| | oxyCODONE HCl Tablet | 12/23/2019 13:35 | 10mg Orally  every 4 hours PRN x 3 day(s) Pill Line Only -- for chronic unremitting pain level of 5-8 |

Indication: Other specified postprocedural states

Order Set Name: BUX Ortho Post-Op Orders - v2

| | oxyCODONE HCl Tablet | 12/23/2019 13:35 | 15mg Orally  every 4 hours PRN x 3 day(s) Pill Line Only -- for chronic unremitting pain level of 9-10 |

Indication: Other specified postprocedural states

Order Set Name: BUX Ortho Post-Op Orders - v2

**Discontinued Medication Orders:**

| Rx# | Medication | Order Date | Prescriber Order |
|---|---|---|---|
| 1574882-BUX | *oxyCODONE HCl  5 MG Tab UD* | 12/23/2019 13:35 | *Take two tablets (10 MG) by mouth every four hours AS NEEDED for chronic unrelenting pain *Date of last pain assessment: 12/23/2019 ***crush/empty**** |

Discontinue Type:   *When Pharmacy Processes*

Discontinue Reason: *Order changed*

Indication:

| 1574774-BUX | *Bisacodyl E.C. 5 MG TAB* | 12/23/2019 13:35 | *Take one tablet (5 MG) by mouth at bedtime* |

Discontinue Type:   *When Pharmacy Processes*

Discontinue Reason: *Order changed*

Indication:

**New Radiology Request Orders:**

| Details | Frequency | End Date | Due Date | Priority |
|---|---|---|---|---|
| General Radiology-Shoulder-General [Right] | One Time | | 12/27/2019 | Routine |

Specific reason(s) for request (Complaints and findings):

s/p right reverse total shoulder surgery 12/20/2019
Baseline films for alignment

**Schedule:**

| Activity | Date Scheduled | Scheduled Provider |
|---|---|---|

| | | |
|---|---|---|
| Inmate Name:  AGUILAR, ANTHONY STEVEN | | Reg #:  33985-177 |
| Date of Birth:  12/25/1973 | Sex:  M  Race:  WHITE | Facility:  BUH |
| Encounter Date: 12/23/2019 13:35 | Provider:  Everett, Chauna PA-C | Unit:  B05 |

| Activity | Date Scheduled | Scheduled Provider |
|---|---|---|
| Procedure | 12/26/2019 00:00 | Ortho 04 |
| Right Reverse Total Shoulder Replacement | | |
| DOS: 12/20/2019 | | |
| Dr. Wheeless | | |
| | | |
| Remove PICO pressure dressing | | |
| Apply Occlusive dressing | | |
| Discharge to the 3rd floor | | |
| Procedure | 01/09/2020 00:00 | Ortho 04 |
| Right Reverse Total Shoulder Replacement | | |
| DOS: 12/20/2019 | | |
| Dr. Wheeless | | |
| | | |
| Remove sutures | | |

**Other:**

New admit and will be followed up in 2 days for PICO dressing exchange

**Patient Education Topics:**

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 12/23/2019 | Counseling | Post-operative Care | Everett, Chauna | Verbalizes Understanding |

**Order Sets Used in This Encounter:**

BUX Ortho Post-Op Orders - v2

**Copay Required:** No      **Cosign Required:** Yes

**Telephone/Verbal Order:** No

Completed by Everett, Chauna PA-C on 12/23/2019 15:11

Requested to be cosigned by  Stock, Andrew M.D..

Cosign documentation will be displayed on the following page.



**RADIOLOGIC REPORT**

U.S. DEPARTMENT OF JUSTICE      FEDERAL BUREAU OF PRISONS

| Patient Identification:<br>Name, Reg #, Date of Birth, Institution<br><br>**AGUILAR, ANTHONY STEVEN**<br>Reg. #: 33985-177<br>DOB:  12/25/1973 | Facility: Butner FMC<br><br>Requested By:<br>Chauna Everett, PA-C | Exam(s) Requested:<br><br>General Radiology – Right Shoulder. |
|---|---|---|

Reasons for Study/Provisional Diagnosis as per Referring Clinician *[per request form]*.
Post-op reverse total shoulder arthroplasty on 12/20/2019.

| Date of Study:<br>01/13/2020 | Date of Dictation:<br>01/13/2020 | Dictation Received:<br>01/13/2020 | Dictation Transcribed:<br>01/13/2020 |
|---|---|---|---|

**Sensitive but Unclassified**

**FINDINGS/IMPRESSION:**
1. Humeral and scapular components of a right shoulder prosthesis are in satisfactory position and alignment. No radiographic evidence of hardware failure or loosening.
2. No acute osseous abnormality identified.

| Signature:<br><br>JAMES W. LESTER, JR., MD | Location of Radiologic Facility:<br>Butner |
|---|---|

Job No: 186286 MT: 0951

| | | | |
|---|---|---|---|
| Inmate Name:  AGUILAR, ANTHONY STEVEN | | Reg #:   33985-177 | |
| Date of Birth:  12/25/1973 | Sex:    M    Race:  WHITE | Facility:  BUH | |
| Encounter Date:  12/21/2019 16:20 | Provider:  Sandhu, Gurinder MD | Unit:    C03 | |

**Exam:**

> Yes: Normo-Active Bowel Sounds

> **Palpation**

> Yes: Within Normal Limits

> **Exam Comments**

> rt shoulder in sling

**ASSESSMENT:**

Shoulder (pain in joint, shoulder region), 719.41 - Current

Essential (primary) hypertension, I10 - Current

Hypertensive heart disease without heart failure, I119 - Resolved

**PLAN:**

**Medication Reconciliation.**
**The patient's known medication list including OTC items was compiled and compared to new and changed BOP orders.**
**New Medication Orders:**

| Rx# | Medication | Order Date | Prescriber Order |
|---|---|---|---|
| | oxyCODONE/Acetaminophen  5MG/325 MG Tablets | 12/21/2019 16:20 | 1 tab  Orally  every 8 hours PRN x 3 day(s) Pill Line Only |
| | **Indication:** Shoulder (pain in joint, shoulder region) | | |
| | Vitamin D ( Cholecalciferol ) Tab/Cap | 12/21/2019 16:20 | 10000 units Orally  -   daily x 30 day(s) |
| | **Indication:** Shoulder (pain in joint, shoulder region) | | |
| | Calcium Citrate/VIT D | 12/21/2019 16:20 | 1 gram Orally  -  three times a day x 30 day(s) -- with each meal |
| | **Indication:** Shoulder (pain in joint, shoulder region) | | |
| | Enoxaparin Injection | 12/21/2019 16:20 | 40 mg Subcutaneously  -  daily x 14 day(s) Pill Line Only |
| | **Indication:** Shoulder (pain in joint, shoulder region) | | |

**Renew Medication Orders:**

| Rx# | Medication | Order Date | Prescriber Order |
|---|---|---|---|
| 1546430-BUX | Bisacodyl E.C. 5 MG TAB | 12/21/2019 16:20 | Take one tablet (5 MG) by mouth at bedtime x 7 day(s) |
| | **Indication:** Constipation, unspecified | | |
| 1546431-BUX | Lisinopril 20 MG Tab | 12/21/2019 16:20 | Take one tablet (20 MG) by mouth each day x 30 day(s) |
| | **Indication:** Hypertensive heart disease without heart failure | | |

**Reconciled Medications:**

| Source | Action | Type | Rx# | Medication | Order Detail |
|---|---|---|---|---|---|
| BOP | Continue | Rx | 1546430-BUX | Bisacodyl E.C. 5 MG TAB | Take one tablet (5 MG) by mouth at bedtime |
| BOP | Continue | Rx | 1546431-BUX | Lisinopril 20 MG Tab | Take one tablet (20 MG) by mouth each day |
| | | OTC | | No known OTCs | |

**Disposition:**

| Inmate Name: | AGUILAR, ANTHONY STEVEN | | | | Reg #: | 33985-177 |
|---|---|---|---|---|---|---|
| Date of Birth: | 12/25/1973 | Sex: | M | Race: WHITE | Facility: | BUH |
| Encounter Date: | 12/23/2019 13:35 | Provider: | Everett, Chauna PA-C | | Unit: | B05 |

| Activity | Date Scheduled | Scheduled Provider |
|---|---|---|
| Procedure | 12/26/2019 00:00 | Ortho 04 |

Right Reverse Total Shoulder Replacement
DOS: 12/20/2019
Dr. Wheeless

Remove PICO pressure dressing
Apply Occlusive dressing
 Discharge to the 3rd floor

| Procedure | 01/09/2020 00:00 | Ortho 04 |
|---|---|---|

Right Reverse Total Shoulder Replacement
DOS: 12/20/2019
Dr. Wheeless

Remove sutures

**Other:**

New admit and will be followed up in 2 days for PICO dressing exchange

**Patient Education Topics:**

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 12/23/2019 | Counseling | Post-operative Care | Everett, Chauna | Verbalizes Understanding |

**Order Sets Used in This Encounter:**

BUX Ortho Post-Op Orders - v2

**Copay Required:** No          **Cosign Required:** Yes

**Telephone/Verbal Order:**   No

Completed by Everett, Chauna PA-C on 12/23/2019 15:11

Requested to be cosigned by  Stock, Andrew M.D..

Cosign documentation will be displayed on the following page.

| Inmate Name: | AGUILAR, ANTHONY STEVEN | | | Reg #: | 33985-177 |
|---|---|---|---|---|---|
| Date of Birth: | 12/25/1973 | Sex: | M   Race:   WHITE | Facility: | BUH |
| Encounter Date: | 12/21/2019 16:20 | Provider: | Sandhu, Gurinder MD | Unit: | C03 |

Admit to Inpatient Unit

**Other:**

admitted to 5B
Med reconciliation done
History and physical done

**Patient Education Topics:**

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 12/21/2019 | Counseling | Access to Care | Sandhu, Gurinder | Verbalizes Understanding |

**Copay Required:** No          **Cosign Required:** No

**Telephone/Verbal Order:** No

Completed by Sandhu, Gurinder MD on 12/21/2019 16:34

**FEDERAL CORRECTIONAL COMPLEX, BEAUMONT, TEXAS**
**PART B – RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY #485116-F1**

This is in response to your Request for Administrative Remedy received on March 6, 2008, in which you request an MRI, to be immediately evaluated by a specialist and to receive surgery if recommended.

Medical care at FCC Beaumont is provided by the University of Texas Medical Branch (UTMB), as part of a comprehensive managed care contract.  A review of your medical record reveals that you were seen by the provider on November 27, 2007, and an order for an orthopedic evaluation and possible MRI was written; however, the provider did not submit the referral.  You presented to the clinic on March 4, 2008, inquiring about your orthopedic referral.  The provider reviewed the note and requested an expedited orthopedic referral.  On March 7, 2008, the request for an orthopedic evaluation was approved.  The appointment was March 13, 2008.  During this appointment, the specialist renewed your ibuprofen 800 mg, informed you to continue using the brace and requested an MRI of the left knee to evaluate an acromioclavicular tear.  Once the MRI is completed, you will be seen by the specialist who will determine the plan of action.

Based on the above information, your referral was not initially placed in a timely manner.  Therefore, your Request for Administrative Remedy has been granted.

If you are not satisfied with this response, you may appeal to the Regional Director at Bureau of Prisons, South Central Region, 4211 Cedar Springs Road, Suite 300, Dallas, Texas 75219.  Your appeal must be received in the South Central Regional Office within 20 calendar days of the date of this response.

_____          _3-18-08_
Jody R. Upton                                    Date
Warden

**EXHIBIT 2:**
**"Administrative Remedies"**

Mr. Aguilar, has satisfied the exhaustion requirement in that (Fmc) Butner received and Denied his request to the Warden for release on June 23, 2020

## Legal Standard

Under 18 USC § 3582 (C) (1)(A) a court may reduce a sentence upon motion of a defendant provided that: (1) the inmate has either exhausted his or her administrative appeal rights of the Bureau of Prison's (BOP) failure to bring such a motion on the inmate's behalf [or has waited until 30 days after the applicable Warden has received such a request]; (2) the inmate has established "extraordinary and compelling reasons for the requested sentence reduction; and (3) the reduction is consistent with Sentencing Commissions Policy statement." United States V. Delateur, No. CR 18-5364 BHS, 2020 WL 3989175, at *2 (W.D. Wash. July 1, 2020). The majority of courts have held that the court is not limited by the Commission's enumeration of what constitutes "extraordinary and compelling reasons." See, e.g. United States V. Locke, No. CR 18-0132 RAJ, 2020 WL 3101016, at *4 (W.D. Wash, June 11, 2020). See also, United States V. Brooker, - F. 3d __, NO. 19-3218-CR, 2020 WL 5739712, at *7 (2d Cir. Sept. 25, 2020) ("The First-Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1 (D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion.") However, this Court need not address that question, because the Government has conceded that the presence of a risk factor - identified by the (CDC) as placing an individual at heightened risk of severe complications from COVID-19 constitutes extraordinary and compelling circumstances under the Commission's Policy Statements. As detailed, Mr. Aguilar has conditions meeting this criterion.



**U. S. Department of Justice**
Federal Bureau of Prisons
*Federal Correctional Complex*
*Federal Medical Center*
*P.O. Box 1600*
*Butner, North Carolina 27509*

June 23, 2020

AGUILAR, ANTHONY
Reg. No.: 33985-177
Quarters: C03-317L

Dear Mr. Aguilar,

Title 18 of the United States Code, section 3582(c)(1)(A), allows a sentencing court, on motion of the Director of the BOP, to reduce a term of imprisonment for extraordinary or compelling reasons. BOP Program Statement No. 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g), provides guidance on the types of circumstances that present extraordinary or compelling reasons, such as the inmate's terminal medical condition; debilitated medical condition; status as a "new law" elderly inmate, an elderly inmate with medical conditions, or an "other elderly inmate"; the death or incapacitation of the family member caregiver of the inmate's child; or the incapacitation of the inmate's spouse or registered partner. Your request has been evaluated consistent with this general guidance.

Medical staff reviewed your request for a Reduction in Sentence (RIS) to determine whether you met the RIS guidelines in accordance with Program Statement 5050.50. It has been determined that you **do not** meet any of the medical criteria (i.e. **Terminal, Debilitated or Elderly with Medical Conditions**) at this time. You do not have a terminal illness and your current medical condition is adequately treated at the institution. You do not have a debilitating medical condition and you are independent of your activities of daily living. Finally, you do not meet the age requirement (i.e. 65 years or older) for Elderly with Medical Conditions. Based upon this information, your request for a Compassionate Release/Reduction in Sentence (RIS) has been denied.

Regarding COVID-19, please know the BOP is taking extraordinary measures to contain the spread of COVID-19 and treat any affected inmates. We recognize that you, like all of us, have legitimate concerns and fears about the spread and effects of the virus. However, any concern about being potentially exposed to, or possibly contracting, COVID-19 does not currently warrant an early release from your sentence.

If you are not satisfied with this response to your request, you may commence an appeal of this decision via the administrative remedy process by submitting your concerns on the appropriate form (BP-9) within 20 days of the receipt of this response. Any decision regarding appeal will be handled in a manner outlined in policy. Additionally, per policy you have a right to file a request for a reduction in sentence with your sentencing court after receiving a BP-11 response or the lapse of 30 days from the receipt of such a request by the Warden's Office.

Sincerely,

T. Scarantino
Complex Warden

cc: AW
Medical Records
Unit Team

I have Done the "Legal Standard"
with the Social worker and Warden that
is Standard requirement by the Court: and
was Denied request from the Warden for release
on June 23, 2020

I have also exhausted all my Administrative
Remedy Appeals as well.

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Aguilar Anthony STEVEN       33985-177       3C #3317       Butner
    LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A– INMATE REQUEST** ON Dec. 22, 2018 the First Step ACT 2018 was Signed into Law. A person can Seek Relief for Extraordinary and compelling Reasons Pursuant to BOP Program Statement 5050.50 And Extraordinary and compelling, Reasons. SEE USSG 1B1.13(1)(A) I am 47 yrs. old and have a number of health conditions that put me at High Risk for Serious complications or Death Should I contract Covid-19. I have advanced heart disease, high blood pressure, Severe Osteoarthritis all over my Body. I have had five surgery's while in prison, because of osteoarthritis, and will need more. I have been on chronic care last 14 yrs. for prostate conditions & chronic constipation, which I had two Herni operations causing Serious bowel Obstruction everyday. I have had reconstruction nose surgery, which causes me Not to breath through the Nose right. In addition I Do not Pose a danger to the Safety of any other Person or community if Released SEE USSG 1B1(13)(2) I AM a First time offender and a model inmate with only one incident report 14 yrs ago. And have done 50% of my time 15 yrs. With my Poor Health and Family Support you could conclude that I will be a minimal Risk to Anyone. My Release Plan is to report Probation officer to transition back into the community. I will live with my parents in Lone Oak Texas. Who will take care of all my needs. I will apply for medicad. With all these Reasons I Respectfully Request you consider my Bop, Record, Medical Records

July 3, 2020    & Circumstances & Recommend my Release.    SIGNATURE OF REQUESTER    Thank
    DATE        Anthony S. Aguilar

**Part B– RESPONSE**

Gave to inmate
7-16-2020
A.Z.

    DATE                 WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE    CASE NUMBER: 1031479-F1

    CASE NUMBER: 1031479-F1

**Part C– RECEIPT**

Return to: _____
    LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

7-7-2020               A.Smith
    DATE               RECIPIENT'S SIGNATURE (STAFF MEMBER)

USP LVN    PRINTED ON RECYCLED PAPER    BP-229(13)
    APRIL 1982

U.S. Department of Justice
Federal Bureau of Prisons
FCC Butner

Request for Administrative Remedy
Part B - Response

---

Admin Remedy Number: 1031479-F1

---

This is in response to your Request for Administrative Remedy, 1030762-F1, receipted July 7, 2020, in which you appeal the denial of your request for a reduction in sentence and/or compassionate release.

Title 18 of the United States Code, section 3582(c)(1)(A), allows a sentencing court, on motion of the Director of the BOP, to reduce a term of imprisonment for extraordinary or compelling reasons. BOP Program Statement No. 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g), provides guidance on the types of circumstances that present extraordinary or compelling reasons, such as the inmate's terminal medical condition; debilitated medical condition; status as a "new law" elderly inmate, an elderly inmate with medical conditions, or an "other elderly inmate"; the death or incapacitation of the family member caregiver of the inmate's child; or the incapacitation of the inmate's spouse or registered partner. Your request for a Compassionate Release/Reduction in Sentence under Terminal, Debilitated, and Elderly with Medical Condition criteria and concerns related to COVID-19 was evaluated under general guidance outlined in the program statement. Based on guidance received on April 6, 2020, from Bureau of Prisons' Central Office at present, there remains no change to the BOP's Compassionate Release/Reduction in Sentence criteria based only on possible exposure to COVID-19. At this time there are no changes to the Compassionate Release/Reduction in Sentence based on CARES Act and Home Confinement under the First Step Act.

Therefore, based on the above information, your Request for Administrative Remedy is denied.

If dissatisfied with this response, you may appeal to the Regional Director, Federal Bureau of Prisons, Mid-Atlantic Regional Office, 302 Sentinel Drive, Suite 200, Annapolis Junction, Maryland, 20701. Your appeal must be received in the Regional Office within 20 days from the date of this response.

T. Scarantino, Complex Warden

7/10/2020
Date

U.S. Department of Justice

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: Aguilar Anthony, S.     33985-177     3C #3317     Butner
     LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

**Part A - REASON FOR APPEAL** I Disagree with the decision that I received my inital Administrative Remedy Request that I filed on July, 3, 2020. Just received my denial on 7-16-2020. I Now exercising my right to appeal to the next level. I filed on the First Step Act that was Signed into Law in 2018, Program Statement 50.50.50. §51.61 Initiation of Request Extraordinary & Compelling Circumstances / COVID-19 request for a motion under this shall be submitted to the warden. This is where the warden is not answering what I'm am requesting. There is Extraordinary and Compelling Circumstances which could NoT Reasonably have Been Forseen by the court at the time of sentencing. SEE USSG 1B1.13 (1)(D) [Other Reasons] - As determined by the Director Of the B.O.P. there Exists in Defendant's case on Extraordinary and Compelling Reason Other than or in combination with the Reasons described in Subdivision (A) through (C). I am 47 yrs old and have a number of underlying health conditions that put me a High Risk for serious complications or Death should I contact COVID-19 virus. I have heart Disease and High blood pressure, severe osteoarthritis All over my body. I have had five surgerys while in prison, because of osteoarthritis and will need more surgery in other areas. I have been on chronic care for

DATE  7-21-2020                    SIGNATURE OF REQUESTER  Anthony S. Aguilar   Continue next p

**Part B - RESPONSE**

DATE                                              REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                    CASE NUMBER: 103479-R1

**Part C - RECEIPT**                                  CASE NUMBER:

Return to: _____
        LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

SUBJECT: _____

DATE                              SIGNATURE, RECIPIENT OF REGIONAL APPEAL

BP-230(13)

Attn: I am Fileing under 1B1.13 Reduction in Term of Imprisonmen
under 18 USC. 3582 (c)(1)(A) Policy Statement
1B1.13(1)(D) and 1B1.13(2) Foreseeability of Extraordinary
and Compelling Reasons

Page (2)

For the last 14yrs for prostate conditions and chronic consispation,
osteoarthritis. Which I had two hernia operations causing me serious Bowel
obstruction everyday. I have had reconstruction Nose surgery, Which
has caused severe breathing problems getting oxygen through the Nose right
which put me at greater risk for Complications or Death should I
contact COVID-19-Virus. Hundreds of incarcerated people and staff
have been infected and over a dozen inmates housed at Butner Federal
Correctional Complex have already died from COVID-19. I have
been lock-down since March, 25 2020 with only 40min a month in phone calls
There getting ready to tranfer me back to a Low compound or to Texarkana Low
where I came from. Which has alot more cases of COVID-19 in
Texas BOP. I am a first-time offender and a model inmate with only one
incident Report 14yrs ago. And have now done 50 percent of my time which is
about 15yrs now. In addition I DO NOT POSE A Danger to the safety of an
other person or community if released. SEE USSG 1B1.13(2) I do
not dispute my orginal offense was serious. However it occured almost
15yrs ago. Which I have plenty of time to learn from my mistakes. I have
worked on myself and took several classes throughout the years to better
educate myself and stay out of trouble. That in combination with the extreme
length on my sentence already served thus far. Should also warrant Compassionate
release as a Non-Violent first-time offender. Finally with my family
support, both my parents are retired and are ready and able to tak care
of me financially. Which I am very grateful. You could conclude that I will
be a minimal Risk to Anyone. My Release Plan is a 5yr term of supervisied
which I will work with Probation officer to transition back into the
community. I will live with my parents in Lone Oak Texas. I will
Apply for medical care under Medicad until I can get back on my feet.
I Respectfully Request You consider my BOP. Record and Medical Record
and Circumstances and and Recomend my Release Thank You Andrew S Granvile

RECEIPT - ADMINISTRATIVE REMEDY


DATE: SEPTEMBER 8, 2020



FROM: ADMINISTRATIVE REMEDY COORDINATOR
      BUTNER FMC

TO  : ANTHONY STEVEN AGUILAR, 33985-177
      BUTNER FMC     UNT: MED/SURG     QTR: C03-317L



THIS ACKNOWLEDGES THE RECEIPT OF THE ADMINISTRATIVE REMEDY REQUEST
IDENTIFIED BELOW:

REMEDY ID       : 1031479-F1
DATE RECEIVED   : JULY 7, 2020
RESPONSE DUE    : JULY 27, 2020
SUBJECT 1       : REDUCTION-IN-SENTENCE REQUEST-OTHER/NON-MEDICAL
SUBJECT 2       :

RECEIPT - ADMINISTRATIVE REMEDY

DATE: SEPTEMBER 8, 2020

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      MID-ATLANTIC REGIONAL OFFICE

TO  : ANTHONY STEVEN AGUILAR, 33985-177
      BUTNER FMC     UNT: MED/SURG     QTR: C03-317L

THIS ACKNOWLEDGES THE RECEIPT OF THE REGIONAL APPEAL
IDENTIFIED BELOW:

REMEDY ID      : 1031479-R1
DATE RECEIVED  : JULY 27, 2020
RESPONSE DUE   : SEPTEMBER 25, 2020
SUBJECT 1      : REDUCTION-IN-SENTENCE REQUEST-OTHER/NON-MEDICAL
SUBJECT 2      :

EXTENSION OF TIME FOR RESPONSE - ADMINISTRATIVE REMEDY

DATE: SEPTEMBER 8, 2020

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      MID-ATLANTIC REGIONAL OFFICE

TO  : ANTHONY STEVEN AGUILAR, 33985-177
      BUTNER FMC      UNT: MED/SURG      QTR: C03-317L

ADDITIONAL TIME IS NEEDED TO RESPOND TO THE REGIONAL APPEAL
IDENTIFIED BELOW.  WE ARE EXTENDING THE TIME FOR RESPONSE AS PROVIDED
FOR IN THE ADMINISTRATIVE REMEDY PROGRAM STATEMENT.

REMEDY ID        : 1031479-R1
DATE RECEIVED    : JULY 27, 2020
RESPONSE DUE     : SEPTEMBER 25, 2020
SUBJECT 1        : REDUCTION-IN-SENTENCE REQUEST-OTHER/NON-MEDICAL
SUBJECT 2        :

No Response

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: Aguilar Anthony. S     33985-177     3C     Butner
        LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

**Part A - REASON FOR APPEAL** I have not recieved a answer within the 35 Day Period of my BP-10 Administrative Remedy which was filed on 7-31-2020. I am Now exercising my right to Appeal to the next level. Following the First Step Act of 2018 a Person can seek Relief the term of imprisonment imposed for extraordinary and Compelling Reasons, Persuant of Program Statement 5050.50 & 571.61 Initiation of request extraordinary or Compelling Circumstances, /Covid-19 /Compassionate Release I filed first My Appeal to the Warden. I believe Extraordinary and Compelling Reason Exist to Reduce my Sentence which is Subdivision(D) SEE USSG 1B1.13(1)(D) which states, Other Reasons is determind by the Director of the BoP there Exists in the defendants Case an Extraordinary and compelling Reasons Other Than or in combination with the Other Reasons described in Subdivision (A) through (C) I am 46yrs old and have a number of underlying Health conditions that put me at high Risk for serious Complications or Death Should I contact Covid-19 Virus, I have heart Disease and Hypertension, Joint Disease, with Severe Osteoarthritis all over my Body. I have had Five surgerys already While in prison because of Joint Damage from osteoarthritis, and will need more surgery in other areas. I have been on Chronic Care for the last 14yrs for Prostrate Conditions and/chronic Constipation, and Now for Osteoarthritis, High Blood Pressure.

DATE    8-25-2020        Anthony S Aguilar
                                           SIGNATURE OF REQUESTER

**Part B - RESPONSE**

DATE                                        GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE             CASE NUMBER: _____

**Part C - RECEIPT**

                                           CASE NUMBER: 1031479 - A1

Return to: _____
        LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION
SUBJECT: _____

DATE                        SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

BP-231(13)
JUNE 2002

page ②     BP-11

Circulation problems, and nerve pain. I take four different medications everyday. I have had two hernia operations causing me serious Bowel obstruction everyday. I have had reconstruction Nose Surgery, which has caused breathing problems getting oxygen through one side of the Nose. Which put me at greater Risk for complications or Death. Should I contact COVID-19 Virus. Hundreds of incarcerated people and staff have been infected and 25 inmates maybe more by Now housed at Butner Federal Correctional Complex have already died from COVID-19 and one staff member. We just had another outbreak of the virus a few weeks ago at (FMC) and still some staff dont any where their mask over there face. It is not a safe enviroment I am a first-time offender and a model inmate with only one incident Report 14yrs ago, for minor infraction. And have Now done 50% percent of my time which is 17yrs with the two year good time I've earned already. Back in Nov. 2019 I was scored by my Unit team as a minimal Recidivism Risk. After I'm released from the Federal Medical Center I would be going to a Camp. In addition I DO NOT POSE A Danger to the Safety of any other person or community if released. SEE. USSG 1B1.13(2) for seeability of Extraordinary and Compelling Reasons. I do not dispute my crime was serious. However it occured almost 15yrs ago. Which I have had plenty of time to learn from my mistakes I have worked on myself and took several classes, throughout the years to better educate myself and stay out of trouble. That in combination with the extreme length on my sentence already served thus far. Should also warrant Compassionate release as a non-Violent first time offender. Finally with my family Support, both my parents are retired and are ready and able to take care of me Financially. My Release Plan is a 5yr term of Supervised Release. Which I will work with the Probation officer to transition back into the community. I will live with my parents in their new home in East Tawakoni, Texas. I will Apply for medical care under (Medicad) until I can get back on my feet. I Respectfully Request you consider my BOP Record and Medical Record And Circumstances and Recommend my Release Thank you Anthony r

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: SEPTEMBER 16, 2020


FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CENTRAL OFFICE

TO  : ANTHONY STEVEN AGUILAR, 33985-177
      BUTNER FMC      UNT: MED/SURG      QTR: C03-317L
      P.O. BOX 1600
      BUTNER, NC 27509



FOR THE REASONS LISTED BELOW, THIS CENTRAL OFFICE APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID        : 1031479-A1      CENTRAL OFFICE APPEAL
DATE RECEIVED    : SEPTEMBER 2, 2020
SUBJECT 1        : REDUCTION-IN-SENTENCE REQUEST-OTHER/NON-MEDICAL
SUBJECT 2        :·
INCIDENT RPT NO:

REJECT REASON 1: SEE REMARKS.

REMARKS          : REGION ACCEPTED YOUR APPEAL ON 8-31-2020, & EXTENDED
                   THE DUE DATE SO THIS APPEAL IS NOT UNTIMELY. WAIT
                   FOR REGIONAL RESPONSE.

Regional Response: Due Sept 25, 2020
Regional Office Did Not Respond.        Date: recieved on
                                              October 5, 2020

Case 4:05-cr-00195-A    Document 773    Filed 01/05/21    Page 86 of 96    PageID 3180

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: Aguilar Anthony S.      33985-177      3C      Butner (Fmc)
      LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

Part A - REASON FOR APPEAL This is my second time to Appeal to your Central Office, The first time was 8-25-2020. I have not heard back from you. But I did recieve a notice three weeks late from Regional Office. For "Extension" of time for Response, Due by Sept. 25, 2020. So Now I am covering my tracks, I have not got any Response, So Now m exercising my right to Appeal again. Following the First STEP Act of 2018 a person can Seek Relief the term of imprisonment imposed for extraordinary and Compelling Reasons. Pursuant of Program Statement 5050.50 or 571.61 Initation of request Extraordinary or Compelling Circumstances./COVID-19/Compassionate Release. I filed first my Appeal to the Warden, For Extraordinary and Compelling Reason that Exist to Reduce my sentence. Which is Subdivision(D) SEE USSG 1B1.13(1)(D)  Which States Other Reasons is determined by the Director of the (BOP) there Exists in the defendants case on Extraordinary and Compelling Reasons other Than Or in Combination with the Other Reason Described in Subdivision (A) through (C) I am 46 yrs. old and suffer from a number of underlying Health Conditions, including Heart Disease and Hypertension, which has been identified by the (CDC) and Prevention as a Condition that makes contraction of the COVID-19          turn page

DATE  10-12-2020                    Anthony S. Aguilar
                                   SIGNATURE OF REQUESTER

Part B - RESPONSE


_____                    _____
DATE                                GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE          CASE NUMBER: _____

Part C - RECEIPT                    CASE NUMBER: _____

Return to: _____
           LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION
SUBJECT: _____

_____              ⊕              _____
DATE                    PRINTED ON RECYCLED PAPER    SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

UPN LVN                                                              BP-231(13)
                                                                    JUNE 2002

Virus a far more serious health risk, to include a greater chance of death. I have been designated a chronic care medical inmate for several years, and suffer from Osteoarthritis throughout my body which has required 4 shoulder and 1 knee surgery. I have had reconstructive nose surgery causing breathing issues and I have had 2 Hernia operations causing bowel

obstruction, which requires daily medication in addition to daily medication I must take for Osteoarthritis, Hypertension, and prostate. Nine Hundred inmates and staff have been infected for Covid-19 and 25 inmates maybe more by now. Housed at Butner Federal Complex have already died, from Covid-19 Virus and one staff member. We are just coming off of lock-down for last six months. For a few hours a day, still some staff members dont where there Mask over their mouth. Not a safe environment. This is my First-Felony conviction and first-time in prison. I am a Non-Violent offender and model inmate have maintained clear conduct for the last 14 yrs. having received only one incident report for minor infraction 300-series. I have served over 57% of my sentence to include 750 days of good-time earned. I have been scored as a "Minimum" Rated Recidivism Risk by Unit Team. I will be satellite Camp eligible in less than a year from now. I was punished harshly on the (PSI) and at sentencing for going to trial. My charge is 50 grams or more of Pure (Meth) thats it. If I was sentence today, I would be at home already. The factual amount of (Dope) and enhancements you are being held accountable for, would have to be presented to the jury, also Now you have to have a factual amount in the (PSI), which wasnt the case when I was sentenced. In addition I DO NOT POSE A Danger to the Safety of any other person or community if released. SEE U.S.S.G 1B1.13(2) Foreseeability of Extraordinary and Compelling Reasons. I do not dispute my crime was serious. However it occured 15 yrs ago which I have worked on myself and learned from my mistakes, took several classes to better educate myself and stay out of trouble. That in combination with the extreme length on my sentence already served thus far. Should also warrant compassionate Release. Finally with my Family-Support, Both my parents retired ready and able to take care of me financially. My Release plan is a 5 yr Supervised Release. Which I will work with Probation to transition back into the community. I will live with my parents in East Tawakoni, Texas. I will Apply for medical care under (medicad) until I can get back on my feet. I Respectfully Request you consider my BOP Record & medical Record and circumstances and Recommend my Release. Thank you   Cinthony S. Aguilar

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: OCTOBER 30, 2020

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CENTRAL OFFICE

TO  : ANTHONY STEVEN AGUILAR, 33985-177
      BUTNER FMC    UNT: MED/SURG    QTR: C03-317L
      P.O. BOX 1600
      BUTNER,  NC 27509

FOR THE REASONS LISTED BELOW, THIS CENTRAL OFFICE APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID       : 1031479-A2       CENTRAL OFFICE APPEAL
DATE RECEIVED   : OCTOBER 19, 2020
SUBJECT 1       : REDUCTION-IN-SENTENCE REQUEST-OTHER/NON-MEDICAL
SUBJECT 2       :
INCIDENT RPT NO:

REJECT REASON 1: YOUR APPEAL OF THE REJECTION IS UNTIMELY. RESUBMISSIONS ARE
                 DUE WITHIN: 5 DAYS (INSTITUTION); 10 DAYS (CCM OR REGIONAL
                 OFFICE); 15 DAYS (CENTRAL OFFICE). SUBMIT STAFF MEMO ON BOP
                 LETTERHEAD STATING REASON UNTIMELY FILING WASN'T YOUR FAULT.

Date: Recieved
NOV, 17, 2020



U.S. Department of Justice
Federal Bureau of Prisons
Federal Correctional Complex
Federal Medical Center
P.O. Box 1000
Butner, NC 27509

November 18, 2020

FROM:          T. Michalski, Counselor

SUBJECT:          Aguilar, Anthony #33985-177

MEMORANDUM FOR ALL CONCERNED

The above referenced inmate received his copy of remedy # 1031479-A1 on 10/5/2020.
Remedy #1031479-A2 was received on 11/17/2020.  Due to Covid modified lockdown
and needing copies, his submissions were late.

BP-A0148
JUNE 10

**INMATE REQUEST TO STAFF** CDFRM

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| TO: (Name and Title of Staff Member) Michalski Counsler | DATE: 12-1-2020 |
|---|---|
| FROM: Anthony Aguilar | REGISTER NO.: 33985-177 |
| WORK ASSIGNMENT: UNSigned | UNIT: 3C  #3317 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.   I would like to request for you to check
On my BP-11 Administrative Remedy ID: 1031479-A2
it was Rejected on October 30, 2020. But I was able
to submit a staff memo on November 18, 2020, stating reason
untimely filing wasn't my fault. So I need to know if
I am pending or what is going On.

(Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date 12/11/2020 |
|---|---|

Record Copy - File; Copy - Inmate

PDF                                    Prescribed by P5511

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

**SECTION 6**

**EXHIBIT 3:**
**"Certificate of Achievements"**

```
BUHYD          *        INMATE EDUCATION DATA      *      11-23-2020
PAGE 001 OF 001 *              TRANSCRIPT          *      16:55:34


REGISTER NO: 33985-177     NAME..: AGUILAR                FUNC: PRT
FORMAT.....: TRANSCRIPT     RSP OF: BUH-BUTNER FMC

-------------------------- EDUCATION INFORMATION ----------------------------
FACL ASSIGNMENT DESCRIPTION              START DATE/TIME STOP DATE/TIME
BUH  ESL HAS    ENGLISH PROFICIENT       09-08-2006 1034 CURRENT
BUH  GED HAS    COMPLETED GED OR HS DIPLOMA  09-13-2006 1435 CURRENT


--------------------------- EDUCATION COURSES ---------------------------
SUB-FACL   DESCRIPTION                  START DATE  STOP DATE EVNT AC LV  HRS
BUH MS     SOLAR SYSTEMS UNIT BASED     11-17-2020 CURRENT
BUH MS     BUSINESS 1 UNIT BASED        09-28-2020 10-13-2020  P  C  P     8
TEX        LIFE IN THE UNIVERSE         09-29-2018 11-27-2018  P  C  P    16
TEX        BASIC MOTOR LEARNING         10-02-2018 11-16-2018  P  C  P     8
TEX        COMPUTER APP 5:30P-8:30P M-THU 02-27-2017 02-16-2018  P  C  C   720
TEX        HEALTH FAIR-VARIOUS TOPICS   07-12-2017 07-12-2017  P  C  P     2
TEX        ULTRA KEY TYPING 8:30A-9:30A 09-26-2016 11-07-2016  P  C  P    24
TEX        BEGINNER'S FRENCH            08-01-2016 10-04-2016  P  C  P    32
TEX        SPANISH VOCABULARY           03-14-2016 05-18-2016  P  C  P    40
TEX        PARENTING,2:35-3:25 MON-FRI SS 09-14-2015 10-27-2015  P  C  P   30
TEX        ELECTRONIC LAW LIB 230-330 FRI 12-23-2014 12-23-2014  P  C  P    1
BMM        CDL ACE CLASS,RPP CT2        06-11-2014 08-05-2014  P  C  P    16
BMM        JOB INTERVIEWING,RPP CT2     01-21-2014 03-27-2014  P  C  P    16
BMM        RESUME WRITING CLASS,RPP CT2 01-21-2014 03-27-2014  P  C  P    16
BMM        MICROCOMPUTER VT PM, RPP CT1 09-11-2012 01-17-2013  P  C  C   240
BMM        ACE REAL ESTATE CLASS        03-14-2008 04-23-2008  P  C  P    16
BMM        40 HOUR DRUG EDUCATION COURSE 12-20-2006 03-06-2007  P  C  P   19
BMM        HIV/AIDS/STDS AND DRUG USE   02-08-2007 02-08-2007  P  C  P     2




















G0000       TRANSACTION SUCCESSFULLY COMPLETED
```

# Certificate of Achievement



*Awarded to*

Anthony Aguilar

*for superior achievement and excellence in*

Basic Cognitive Skills

*this* 17th *day of* October

*in the year* 2016 .

*Signed* Staff Psychologist

# Certificate of Achievement



Awarded to

Anthony Aguilar

for superior achievement and excellence in

Criminal Thinking

this 12th day of December

in the year 2016.

Signed _____ Staff Psychologist

ANTHONY STEVEN AGUILAR
REG. NO. 33985-177
FMC BUTNER
FEDERAL MEDICAL CENTER
P.O. BOX 1600
BUTNER, NC  27509

December 23, 2020

Ms. Karen Mitchell
Clerk of Clerk
U. S. District Court
Northern District of Texas
Fort Worth Division
501 West 10th Street, Room 310
Fort Worth, TX 76102-3673

      RE:   *Aguilar v. United States*
             Crim No. 4:05-cr-00195-A-5

Dear Ms. Mitchell:

     Enclosed please find and accept for filing Movant's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) and First Step Act of 2018. Please submit this document to the Court.

     Thank you for your assistance in this matter.

                                Sincerely,

                                ANTHONY STEVEN AGUILAR
                                Appearing *Pro Se*

*Encl. as noted*

